# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

CHAMMA K. BRANDON,

        Plaintiff,

    v.

DR. GLEN SCHROYER, *et al.*,

        Defendants.

Civil Action No.
9:13-CV-0939 (TJM/DEP)

---

APPEARANCES:

FOR PETITIONER:

CHAMMA K. BRANDON, *Pro se*
12-A-5715
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

FOR RESPONDENTS:

LEMIRE, JOHNSON & HIGGINGS, LLC
2534 Route 9
P.O. Box 2485
Malta, NY 12020

THUILLEZ, FORD, GOLD, BUTLER &
MONROE, LLP
20 Corporate Woods Blvd., 3rd Floor
Albany, NY 12211

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

OF COUNSEL:

BRADLEY J. STEVENS, ESQ.

KELLY M. MONROE, ESQ.
MOLLY C. CASEY, ESQ.

<u>REPORT AND RECOMMENDATION</u>

This is a civil rights action brought by *pro se* plaintiff Chamma K. Brandon, a prison inmate formerly confined in the Clinton County Jail ("CCJ"), against several individuals working at that facility. In one of his remaining claims in the action, plaintiff contends that defendants Eric Blaise and Margaret Clancy, two CCJ corrections employees, failed to protect him from a hostile and mentally ill fellow inmate, and, as a result, the inmate spit at him.

Defendants Blaise and Clancy have now moved for the entry of summary judgment dismissing plaintiff's remaining claim asserted against them, both on the procedural ground that plaintiff failed to exhaust available administrative remedies before filing suit and on the merits. For the reasons set forth below, I recommend that the motion be granted.

I.   <u>BACKGROUND</u>[1]

Plaintiff was confined in the CCJ, beginning on January 14, 2012, and again following his re-arrest on March 2, 2012. <u>Dkt. No. 17 at 3</u>, 12-13. Plaintiff's incarceration at the CCJ ended on December 28, 2012, when he was transferred into the custody of the New York State Department of Corrections and Community Supervision. *Id.* at 11.

---

[1]    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in the non-movant's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

While at the CCJ, plaintiff was housed in cell OBSV2-2 from November 10, 2012, until November 19, 2012. Dkt. No. 122-3 at 3; Dkt. No. 122-9 at 2. That placement resulted from plaintiff's involvement in a fight with another inmate. Dkt. No. 122-9 at 2; *see also* Dkt. No. 122-2 at 1-12. The OBSV2 unit at the CCJ consists of three cells separated by concrete walls to prevent physical interaction between inmates housed in the units. Dkt. No. 122-9 at 2-3; *see also* Dkt. No. 122-5 at 2-3.

Fellow inmate Terrance Somma, who plaintiff refers to in his amended complaint as "Tiny" and who he characterizes as "hostile and mentally deranged," Dkt. No. 17 at 31, was transferred into cell OBSV2-1, which is next to the cell in which plaintiff was housed, on November 17, 2012, also due to his involvement in a fight with a fellow inmate. Dkt. No. 122-9 at 2; *see also* Dkt. No. 122-4 at 2-8. The decision to transfer inmate Somma into the cell adjacent to plaintiff's was made by defendant Clancy, a corrections sergeant, in her discretion. Dkt. No. 122-9 at 3; *see also* Dkt. No. 122-8 at 2.

On November 18, 2012, defendant Blaise, a corrections officer, instructed plaintiff to exit his cell and collect all of the food trays from the unit, and promised that, in return, plaintiff would be allowed to remain out of his cell for an extra fifteen minutes. Dkt. No. 17 at 31. Plaintiff responded by informing defendant Blaise that he had been verbally

assaulted by inmate Somma the night before and stating that he "would rather not pick up [his] tray." *Id.* Plaintiff alleges that defendant Blaise then said to him, "[D]on't worry about him, he's a punk. Besides, from what I heard, I'm sure if I let him out, you'd kick his ass." *Id.*

As plaintiff was in the course of picking up trays, defendant Blaise witnessed inmate Somma spitting on plaintiff. Dkt. No. 17 at 31; Dkt. 122-7 at 2. At no point during the encounter did inmate Somma physically touch plaintiff. Dkt. No. 122-7 at 3. Following the incident, defendant Clancy spoke with inmate Somma concerning the matter and warned him that further disruptive behavior would result in discipline. Dkt. No. 122-8 at 3.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on or about August 8, 2013, and later filed an amended complaint, the currently operative pleading, on August 15, 2014. Dkt. Nos. 1, 17. In his amended complaint, which spans forty-four pages, is comprised of 336 paragraphs, and is accompanied by approximately 177 pages of exhibits, plaintiff chronicles various occurrences at the CCJ giving rise to his various claims. *See generally* Dkt. No. 17. The causes of action set forth in that pleading include deliberate medical indifference, religious deprivation, retaliation, conspiracy, and failure to protect him from harm. *Id.* As defendants, plaintiff's amended complaint named the County of Clinton and ten other

defendants, including a jail doctor, a jail nurse, a food service manager, and seven corrections personnel. *Id.*

At a result of prior court decisions, the sole remaining claims in the action are asserted against Dr. Glen Schroyer, Corrections Officer Blaise, and Corrections Sergeant Clancy. Plaintiff's claims against defendant Schroyer were the subject of a motion for summary judgment filed on March 9, 2016. Dkt. No. 100. In a report issued on July 13, 2016, I recommended to Senior District Judge Thomas J. McAvoy that plaintiff's remaining claim against defendant Schroyer be dismissed. Dkt. No. 136. That report and recommendation, together with objections filed by the plaintiff, remain pending before Judge McAvoy.

On June 1, 2016, with permission from the court, defendants Blaise and Clancy filed a second motion for summary judgment seeking dismissal of plaintiff's remaining failure to protect claim asserted against them.[2] Dkt. No. 122. Plaintiff has responded in opposition to defendants' motion, Dkt. No. 152, and defendants Blaise and Clancy have since filed a reply in further support of their motion. Dkt. No. 158. Defendants' motion, which is now fully briefed and ripe for determination, has been referred to

---

[2]    An earlier summary judgment motion filed on behalf of some of the defendants, including defendants Blaise and Clancy, did not address plaintiff's failure to protect claim against defendants Blaise and Clancy. Dkt. No. 75. In the court's order acting on that motion, those two defendants were given permission to file a second summary judgment motion addressing that claim. Dkt. No. 99 at 55; Dkt. No. 112 at 2.

me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the

failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Failure to Exhaust

In their motion, defendants argue that plaintiff is procedurally barred from pursuing his failure to protect claims against defendants Blaise and Clancy based upon his failure to properly exhaust available administrative remedies before commencing suit. Dkt. No. 122-10 at 8-9. Plaintiff has responded by arguing that he in fact filed a grievance, and, when he did

not receive a response, appealed to the Chief Administrative Officer and then to the Citizen's Policy and Complaint Review Council. Dkt. No. 152 at 6.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper

exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

In this case, there is no evidence in the record concerning the procedures in place for inmates at the CCJ to follow in order to lodge complaints regarding prison conditions. Indeed, although defendants seek dismissal of plaintiff's remaining claims asserted against them on this procedural basis, and have provided some evidence in support, Dkt. No. 122-9 at 3, they have failed to include any evidence or explanation of the procedures available to CCJ inmates. *See generally* Dkt. No. 122-10 at 8-9. Accordingly, in light of plaintiff's sworn statement that he filed a grievance concerning the failure of defendants Blaise and Clancy to protect him from an inevitable altercation with inmate Somma, Dkt. No. 152 at 2, and that he appealed to "the Chief Administrative Officer" and "the Citizen's Policy and Complaint Review Council" when he did not receive a response to his grievance, I find there are factual disputes that must be resolved prior to rendering a determination on defendants' exhaustion defense. For this reason, I recommend that defendants' motion be denied to the extent it seeks dismissal of plaintiff's failure to protect

claims on the basis of exhaustion.[3]

    C.    <u>Failure to Protect</u>

In their motion, defendants mount a two-pronged attack against plaintiff's failure to protect claim. Dkt. No. 122-10 at 10-11. First, they argue that there is no record evidence that they were or should have been aware of, but disregarded, a substantial risk to plaintiff's safety. *Id.* at 11. Second, defendants contend that because plaintiff was not physically attacked, but only spit upon, any harm resulting from defendants' failure to protect him was *de minimis*, and not constitutionally significant. *Id.* at 10-11.

It is well-established that prison officials have a duty to intervene and prevent a cruel and unusual punishment, prohibited by the Eighth

---

[3]    In addition to plaintiff's contention that he filed a grievance concerning the incident involving inmate Somma, he also contends that he filed a grievance against defendants Blaise and Clancy based on their alleged refusal to provide him with a grievance form immediately following the attack. Dkt. No. 152 at 6. In the event plaintiff's statements are construed as alleging that he only filed grievances specifically complaining of the assault by inmate Somma and defendants' failure to provide him with a grievance (rather than specifically grieving defendants' failure to protect plaintiff from harm), there is sufficient evidence in the record to create a genuine dispute of fact concerning whether the grievance procedure was actually available to plaintiff in light of his allegations that defendants interfered with his ability to obtain a grievance after the attack. *See Ross*, 136 S. Ct. at 1860 (finding that administrative remedies may be deemed unavailable to prisoners when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). Thus, defendants' exhaustion defense fails at this juncture for this reason, as well. Under ordinary circumstances, I would recommend to the assigned district judge that he conduct a fact-finding hearing regarding exhaustion pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011). In light of my recommendation below, however, that plaintiff's failure to protect claim be dismissed on the merits, an exhaustion hearing is not necessary.

Amendment, from occurring or continuing. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Hayes v. N.Y. City Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996). That duty extends an obligation upon prison officials to protect inmates from harm inflicted by fellow inmates. *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) ("The failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment.")

A plaintiff asserting a failure to protect claim must prove that the defendant actually knew of and disregarded an excessive risk of harm to his health and safety. *Hayes*, 84 F.3d at 620. This "reckless disregard" to a plaintiff's health and safety can be proven by evidence establishing "a pervasive risk of harm to inmates . . . and a failure by prison officials to reasonably respond to that risk." *Knowles v. N.Y. Dep't of Corrs.*, 904 F. Supp. 217, 222 (S.D.N.Y. 1995) (quotation marks omitted). Said differently, to establish liability on the part of a defendant under this theory, "the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene." *Henry v. Dinelle*, No. 10-CV-0456, 2011 WL 5975027, at *4 (N.D.N.Y. Nov. 29, 2011) (Suddaby, J.) (citing *Jean-Laurent v.*

*Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)); [4] *see also Farmer*, 511 U.S. at 842 ("[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (finding no realistic opportunity to intervene where "three blows were struck in . . . rapid succession").

In this case, turning first to defendants' second argument for dismissal of plaintiff's claims on the merits, defendants contend that plaintiff suffered a *de minimis* injury, which does not give rise to a constitutionally cognizable cause of action. Dkt. No. 122-10 at 10-11. As recently as 2015, however, the Second Circuit has reiterated that a "serious injury is unequivocally not a necessary element of an Eighth Amendment claim." *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015). Although a plaintiff's injury certainly is relevant to an Eighth Amendment analysis, it is not dispositive with respect to liability. *Willey*, 801 F.3d at 68. For that reason, I do not find defendants' argument with respect to the injury plaintiff suffered is an appropriate basis for dismissal of plaintiff's claims.

Defendants also argue, however, that they had no reason to know that plaintiff was exposed to a substantial risk of serious harm when

---

4     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

defendant Blaise instructed plaintiff to collect the food trays in the OBSV2 unit. Dkt. No. 122-10 at 11. Although there is evidence that plaintiff informed defendant Blaise that inmate Somma had verbally harassed him the night before the incident, in my view, the focus of the analysis in this case is whether plaintiff experienced conditions of confinement that placed him at substantial risk of serious harm. *See Farmer*, 511 U.S. at 834 ("For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."). It is undisputed that inmate Somma remained locked in his cell during the tray pick-up, and neither defendant Blaise nor defendant Clancy knew of any prior history of violence between plaintiff and inmate Somma. Dkt. No. 122-7 at 2-3; Dkt. No. 122-8 at 2-3. Thus, it strains credulity to believe that, under those circumstances, plaintiff was at risk of becoming involved in a physical altercation with inmate Somma during the tray pick-up. Plaintiff argues that the front of the cells in the OBSV2 unit are enclosed only by cell bars, which "do not prevent the occupying detainee from reaching out of the cell and physically interacting with someone whom stands/walks in front of the cell[.]" Dkt. No. 152 at 5 (quotation marks omitted). Based on the totality of the record evidence, however, no reasonable factfinder could conclude that defendants should have been aware that plaintiff was at risk of becoming involved in a violent

altercation with inmate Somma through the cell-bar barrier during the brief moment that plaintiff passed inmate Somma's cell.

Moreover, focusing on the specific incident at issue, I note that courts have routinely concluded that inmates' health and safety is not placed at substantial risk by the potential of another inmate spitting on them. *See Jones v. Salley*, No. 12-CV-0510, 2013 WL 5567321, at *3 (M.D. Fla. Oct. 9, 2013) ("To the extent these correctional officers did not protect Plaintiff from other inmates spitting on him, this allegation, without more, cannot reasonably be perceived as presenting a substantial risk of serious harm."); *Kocher v. Luzerne Cnty. Corr. Facility*, No. 11-CV-1000, 2011 WL 2470382, at *3 (M.D. Pa. June 20, 2011) (dismissing the plaintiff's failure to protect claim because his "allegation that he was spit on, without more, cannot reasonably be perceived as presenting a substantial risk of harm"); *Kron v. Tanner*, No. 10-CV-0518, 2010 WL 3199854, at *8 n.31 (E.D. La. May 19, 2010) ("[T]he failure to protect plaintiff from [another inmate spitting on him] did not expose him to a substantial risk of serious harm."); *York v. Jackson*, No. 08-CV-0547, 2008 WL 2641268, at *3 (E.D. Va. July 2, 2008) (dismissing the plaintiff's failure to protect claim finding that being spat on by another inmate "does not amount to cruel and unusual punishment); *see also Farmer*, 511 U.S. at 834 ("It is not. . . every injury suffered by one prisoner at the hands of another that translates into

constitutional liability for prison officials responsible for the victim's safety."); *DeMallory v. Cullin*, 855 F.2d 442, 444 (7th Cir. 1988) (affirming the district court's conclusion that "a correctional officer spitting upon a prisoner does not rise to the level of a constitutional violation" (quotation marks omitted)); *accord, Carson v. Birkett*, No. 05-CV-72679, 2005 WL 1981294, at *1 (E.D. Mich. Aug. 16, 2005). Accordingly, even assuming that defendants Blaise and Clancy were aware that inmate Somma had verbally harassed plaintiff the night before the incident and defendants Blaise and Clancy knew that both inmates had been placed in the OBSV2 unit as a result of violent encounters with other inmates, no reasonable factfinder could conclude that they should have been aware that plaintiff was at risk of serious harm when defendant Blaise asked him to collect the food trays while inmate Somma remained locked in his cell, when they knew of no history of violence between plaintiff and inmate Somma. For that reason, I recommend that defendants' motion be granted and plaintiff's failure to protect claims asserted against defendants Blaise and Clancy be dismissed.

IV.    SUMMARY AND RECOMMENDATION

In their motion, defendants Blaise and Clancy seek dismissal of plaintiff's claims against them based both on plaintiff's alleged failure to exhaust available administrative remedies before filing suit and on the

merits. Turning first to defendants' procedural argument, I conclude that the record is equivocal with respect to critical facts surrounding this issue, and that the question of whether the grievance process in place at the CCJ was available to plaintiff cannot be determined without the resolution of certain factual disputes. Addressing defendants' arguments regarding the merits, I conclude that no reasonable factfinder could conclude that plaintiff experienced a substantial risk of serious harm and, therefore, his failure to protect claims fail on the merits. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment motion (Dkt. No. 122) be GRANTED, and that plaintiff's remaining claims in this action against defendants Blaise and Clancy be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

---

[5]     If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:      February 28, 2017
            Syracuse, New York


_____
David E. Peebles
U.S. Magistrate Judge

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Jonathan HENRY, Plaintiff,
v.
James F. DINELLE, Corrections Officer; Russell E.
Duckett, Corrections Officer; Alfred J. Deluca,
Corrections Officer; Donald L. Broekema, Sergeant;
and Jean Norton, Nurse, Defendants.
No. 9:10–CV–0456 (GTS/DEP).

Nov. 29, 2011.
Sivin & Miller, LLP, Edward Sivin, Esq., of Counsel,
New York, NY, for Plaintiff.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, Timothy P. Mulvey, Esq., Assistant
Attorney General, of Counsel, Albany, NY, for
Defendants.

### MEMORANDUM–DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this prisoner civil
rights action filed by Jonathan Henry ("Plaintiff") against
the five above-captioned employees of the New York
State Department of Corrections and Community
Supervision ("Defendants"), is Defendants' motion for
partial summary judgment. (Dkt. No. 24.) For the reasons
set forth below, Defendants' motion is granted in part and
denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint
alleges that, between approximately January 29, 2009, and
January 31, 2009, at Ulster Correctional Facility in
Napanoch, New York, Defendants violated Plaintiff's
following rights in the following manner: (1) Defendants

Nurse Jean Norton, Corrections Officer James F. Dinelle,
Corrections Officer Russell E. Duckett and Corrections
Officer Alfred J. DeLuca violated Plaintiff's rights under
the First Amendment by filing retaliatory false
misbehavior reports against him, and subsequently
providing false testimony against him at administrative
disciplinary hearings, which resulted in his spending time
in the Special Housing Unit ("SHU"); (2) Defendant
Dinelle violated Plaintiff's rights under the Eighth
Amendment by assaulting him on two occasions, and
Defendants DeLuca and Duckett violated Plaintiff's rights
under the Eighth Amendment by assaulting him once; (3)
Defendant Sergeant Donald L. Broekema violated
Plaintiff's rights under the Eighth Amendment by failing to
intervene to prevent one of these assaults from occurring;
(4) Defendant Norton violated Plaintiff's rights under the
Eighth Amendment by harassing him almost immediately
before he was subjected to the above-described assaults;
and (5) Defendants Norton, Dinelle, Duckett and DeLuca
violated Plaintiff's rights under the Fourteenth Amendment
by performing the aforementioned acts, which constituted
atypical and significant hardships in relation to the
ordinary incidents of prison life. (*See generally* Dkt. No.
1 [Plf.'s Compl.].) Familiarity with the factual allegations
supporting these claims in Plaintiff's Complaint is assumed
in this Decision and Order, which is intended primarily for
review by the parties. (*Id.*)

### B. Undisputed Material Facts

At all times relevant to Plaintiff's Complaint, Plaintiff
was an inmate and Defendants were employees of the New
York State Department of Corrections and Community
Supervision at Ulster Correctional Facility. On January 30,
2009, Defendant Dinelle took Plaintiff to the medical
ward, because Plaintiff was experiencing a foul odor and
oozing from a wound on his leg. After Defendant Norton
treated Plaintiff, she filed an inmate misbehavior report
against Plaintiff based on (1) Plaintiff's harassing behavior
toward Defendant Norton and Defendant Dinelle, and (2)
Plaintiff's disobedience of a direct order to be quiet. The
misbehavior report was signed by Defendant Dinelle as an
employee witness.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

At his deposition, Plaintiff testified, while leaving the infirmary, he was punched and kicked by Defendant Dinelle and two unknown prison officials. Plaintiff was then taken to the SHU, where he waited with Defendants Dinelle and Duckett, and up to three more individuals, for a sergeant to arrive. When Defendant Broekema (a sergeant) arrived at the SHU, Plaintiff was taken to a frisk room, where a frisk was conducted. During the frisk, Defendants Dinelle, Duckett and (Plaintiff suspected) DeLuca used force to bring Plaintiff to the ground. Plaintiff testified that, during the use of force, he was simultaneously punched in the nose by two officers while their supervisor watched.

**\*2** After the use of force, Plaintiff stated to Defendants Dinelle, Broekema and Duckette, "I will be contacting my attorney," or "I will be calling a lawyer." [FN1] Plaintiff never used the term "grievance" when addressing Defendants Dinelle, Broekema and Duckette (or Defendant Norton).[FN2] Subsequently, Defendant Duckett filed an inmate misbehavior report against Plaintiff based on his disobedience of frisk procedures and a direct order. Defendant DeLuca signed this report as a witness to the events.

> [FN1.] (*Compare* Dkt. No. 24, Attach. 9, at ¶ 17 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 27, Attach. 3, at ¶ 17 [Plf.'s Rule 7 .1 Response]; *see also* Dkt. No. 24, Attach. 4, at 100, 102–03 [attaching pages 216, 218 and 219 of Trans. of Plf.'s Depo.]; Dkt. No. 33, at 2–3 [attaching pages 228 and 229 of Trans. of Plf.'s Depo .].)

> [FN2.] (*Compare* Dkt. No. 24, Attach. 9, at ¶ 17 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 27, Attach. 3, at ¶ 17 [Plf.'s Rule 7 .1 Response]; *see also* Dkt. No. 24, Attach. 4, at 59–60, 100, 102–03 [attaching pages 175, 176, 216, 218 and 219 of Trans. of Plf.'s Depo.]; Dkt. No. 33, at 2–3 [attaching pages 228 and 229 of Trans. of Plf.'s Depo.].)

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is assumed in this Decision and Order, which

(again) is intended primarily for review by the parties. (*Id.*)

**C. Defendants' Motion**

Generally, in support of their motion for partial summary judgment, Defendants argue as follows: (1) Plaintiff's claim that Defendants issued false misbehavior reports should be dismissed because Plaintiff has no constitutional right to be free of false misbehavior reports; (2) Plaintiff's First Amendment retaliation claim should be dismissed because he has failed to adduce admissible record evidence from which a rational factfinder could conclude that he (a) engaged in protected activity, or (b) suffered adverse action as a result of engaging in protected activity; (3) Plaintiff's Fourteenth Amendment substantive due process claim should be dismissed because he has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendants deprived Plaintiff of his liberty rights; (4) Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton should be dismissed because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that she (a) used force against Plaintiff, or (b) was in a position to prevent the use of force from occurring, yet failed to do so; (5) Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca should be dismissed because Plaintiff's identification of Defendant DeLuca is "very tentative"; (6) Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema should be dismissed because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Broekema had a realistic opportunity to intervene to prevent or stop the assault, yet failed to do so; and (7) Defendants are protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances. (*See generally* Dkt. No. 24, Attach. 10 [Defs.' Memo. of Law].).[FN3]

> [FN3.] In their motion, Defendants do not challenge the evidentiary sufficiency of Plaintiff's Eighth Amendment excessive-force claim against Defendants Dinelle or Duckett. (*See generally* Dkt. No. 24, Attach. 10 [Defs.' Memo. of Law].)

In Plaintiff's response to Defendants' motion for partial summary judgment, he argues as follows: (1) his

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

retaliation claims should not be dismissed because there are triable issues of fact as to whether Defendants retaliated against him for stating that he would be contacting an attorney; (2) his failure-to-intervene claim against Defendant Broekema should not be dismissed because there are triable issues of fact as to whether Defendant Broekema failed to prevent excessive force from being used against him; (3) his excessive-force claim against Defendant DeLuca should not be dismissed because there are triable issues of fact as to whether Defendant DeLuca used excessive force against him; and (4) Defendants are not protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances. (*See generally* Dkt. No. 27, Attach. 5 [Plf.'s Response Memo. of Law].) <sup>FN4</sup>

> FN4. Plaintiff does not oppose Defendants' arguments that (1) Plaintiff's excessive-force claim against Defendant Norton should be dismissed, and (2) Plaintiff's substantive due process claim should be dismissed. (*See generally* Dkt. No. 27, Attach. 5 [Plf.'s Response Memo. of Law].)

**\*3** In their reply, Defendants essentially reiterate their previously advanced arguments. (*See generally* Dkt. No. 29, Attach. 1 [Defs .' Reply Memo. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't,* 04–CV–0828, 2009 WL 3165551, at *2–3 (N.D.N.Y. Sept.29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B. Legal Standards Governing Plaintiff's Claims

### 1. First Amendment Retaliation Claim

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004). Central to such claims is the notion that, in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of his First Amendment rights. *See Gill,* 389 F.3d at 381–383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

> *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that (1) the speech or conduct at issue was "protected", (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights, and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d 489, 492 [2d Cir.2001] ). Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

on the proper reasons alone. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

**\*4** In determining whether an inmate has established a prima facie case of a causal connection between his protected activity and a prison official's adverse action, a number of factors may be considered, including the following: (1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation. *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996); *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002). Even where the inmate has established such a prima facie case, the prison official may be entitled to judgment as a matter of law on the inmate's retaliation claim where the prison official has satisfied his burden of establishing that the adverse action would have been taken on proper grounds alone. *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994); *Jordan v. Garvin,* 01–CV–4393, 2004 WL 302361, at \*6 (S.D.N.Y. Feb.17, 2004).

**2. Eighth Amendment Claims of Excessive–Force and Failure–to–Intervene**

To establish a claim of excessive-force under the Eighth Amendment, a plaintiff must satisfy two components: "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009). In consideration of the subjective element, a plaintiff must allege facts which, if true, would establish that the defendant's actions were wanton " 'in light of the particular circumstances surrounding the challenged conduct.' " *Id.* (quoting *Blyden v. Mancusi,* 186 F.3d 252, 262 [2d Cir.1999] ). The objective component asks whether the punishment was sufficiently harmful to establish a violation "in light of 'contemporary standards of decency.' " *Wright,* 554 F.3d at 268 (quoting *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Generally, officers have a duty to intervene and prevent such cruel and unusual punishment from occurring or continuing. *Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). "It is well-established that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers." *Cicio v. Lamora,* 08–CV–0431, 2010 WL 1063875, at \*8 (N.D.N.Y. Feb.24, 2010) (Peebles, M.J.). A corrections officer who does not participate in, but is present when an assault on an inmate occurs may still be liable for any resulting constitutional deprivation. *Id.* at \*8. To establish a claim of failure-to-intervene, the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene. *Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008). Generally, officers cannot be held liable for failure to intervene in incidents that happen in a "matter of seconds." *Parker v. Fogg,* 85–CV–177, 1994 WL 49696 at \*8 (N.D.N.Y. Feb.17, 1994) (McCurn, J.).

**3. Fourteenth Amendment Substantive Due Process Claims**

**\*5** The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. *Zinernon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon,* 494 U.S. at 125 [internal quotations marks omitted]. The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property ... *without due process of law." Id.* at 125–126 [internal quotations marks and citations omitted; emphasis in original]. One of the differences between the two claims is that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question). *Id.*

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) [internal quotations marks and citations omitted], *aff'g,* 91–CV–1196, Memorandum–Decision and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

Order (N.D.N.Y. filed Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in inmate's civil rights action).

"An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes 'an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Whitaker v. Super,* 08–CV–0449, 2009 WL 5033939, at *5 (N.D.N.Y. Dec. 14, 2009) (Kahn, J. adopting Report–Recommendation by Lowe, M.J.) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 [1995] ). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU. *Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004). When evaluating whether an inmate's confinement in SHU violates his substantive due process rights, the issue, then, is whether his keeplock confinement imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Id.* at 64.

"In the Second Circuit, determining whether a disciplinary confinement constituted an 'atypical and significant hardship' requires examining 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement.' " *Whitaker,* 2009 WL 5033939, at *5 (quoting *Palmer,* 364 F.3d at 64). "Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an 'atypical and significant hardship' only if 'the conditions were more severe than the normal SHU conditions.' " *Id.* (quoting *Palmer,* 364 F.3d at 65).[FN5]

> FN5. Generally, " '[n]ormal' SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week." *Whitaker,* 2009 WL 5033939, at *5 n. 27 (citing *Ortiz v. McBride,* 380 F.3d 649, 655 [2d Cir.2004] ).

**4. Qualified Immunity Defenses**

**\*6** The qualified immunity defense is available to only those government officials performing discretionary functions, as opposed to ministerial functions. *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991). "Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004), *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 [1992].[FN6] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007).[FN7] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley*

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

*v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).[FN8] As the Supreme Court has explained,

> FN6. *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Div. of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

> FN7. *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' "); *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

> FN8. *See also Malsh v. Corr. Oficer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity

should be recognized.

*Malley,* 475 U.S. at 341.[FN9]

> FN9. *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks omitted].

## III. ANALYSIS

### A. Plaintiff's Retaliation Claim Under the First Amendment

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that he (1) engaged in protected activity, or (2) suffered adverse action as a result of engaging in protected activity. More specifically, Defendants argue that the claim should be dismissed because (1) the statement of an inmate's intent to contact an attorney is not protected conduct, (2) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Norton knew of Plaintiff's intention to contact an attorney, and (3) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendants' actions were retaliatory. (Dkt. No. 24, Attach.10.) [FN10]

> FN10. Defendants also argue that Plaintiff's First Amendment claim should be dismissed to the extent that it is based solely on the fact that misbehavior reports against him were *false* (as opposed to being false *and retaliatory* ). The Court agrees that Plaintiff has no general constitutional right to be free from false misbehavior reports. *See Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir.1997). As a result, to the extent that the Plaintiff's Complaint may be construed as asserting a claim based solely on the issuance of false behavior reports, that claim is dismissed.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

**\*7** After carefully considering the admissible record evidence adduced in this case, and carefully reviewing the relevant case law, the Court has trouble finding that an inmate's one-time making of an oral statement (immediately after the use of force against him) that he would be "contacting [his] attorney," or "calling a lawyer" at some unidentified point in the future constitutes engagement in activity that is protected by the First Amendment—especially where, as here, the inmate did not reference the prison grievance process in his statement.

Representation by a lawyer is certainly not necessary to file an inmate grievance in the New York State Department of Corrections and Community Supervision, nor does such representation necessarily result in the filing of a grievance. Rather, such representation is most typically associated with the filing of a civil rights action in federal court (as is clear from the motions for appointment of counsel typically filed in federal court actions). As a result, the statement in question does not reasonably imply that Plaintiff would be filing a grievance as much as it implies that he was going to consult an attorney as to whether or not to file a civil rights action in federal court.

Here, such a statement is problematic. This is because, generally, the filing of the prisoner civil rights action in federal court in New York State must be preceded by the prisoner's exhaustion of his available administrative remedies (or his acquisition of a valid excuse for failing to exhaust those remedies). Any filing without such prior exhaustion (or acquisition of a valid excuse), under the circumstances, would be so wholly without merit as to be frivolous. Of course, filing a court action that is frivolous is not constitutionally protected activity.[FN11]

FN11. *See Wade–Bey v. Fluery,* 07–CV–117, 2008 WL 2714450 at \*6 (W.D.Mich. July 8, 2010) ("Although it is well established that prisoners have a constitutional right of access to the courts ..., the filing of a frivolous lawsuit would not be protected activity.") [citation omitted].

Moreover, to the extent that Plaintiff's statement could be construed as reasonably implying that he was going to consult an attorney as to whether or not to file a grievance, the Court has trouble finding that such a vague statement is constitutionally protected.[FN12] As one district court has stated, "[h]oping to engage in constitutionally protected activity is not itself constitutionally protected activity."[FN13] The Court notes that a contrary rule would enable a prisoner who has committed conduct giving rise to a misbehavior report to create a genuine issue of material fact (and thus reach a jury) on a retaliation claim (alleging adverse action based on the issuance of that misbehavior report) simply by uttering the words, "I'm calling a lawyer," after he commits the conduct in question but before the misbehavior report is issued.

FN12. The Court notes that numerous cases exist for the point of law that even *expressly threatening* to file a *grievance* does not constitutes protected activity. *See, e.g., Bridges v. Gilbert,* 557 F.3d 541, 554–55 (7th Cir.2009) ("[I]t seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.") [emphasis in original]; *Brown v. Darnold,* 09–CV–0240, 2011 WL 4336724, at \*4 (S.D.Ill. Sept.14, 2011) ("Plaintiff cannot establish that his threat to file a grievance against Defendant Darnold is a constitutionally protected activity."); *Koster v. Jelinek,* 10–CV–3003, 2011 WL 3349831, at \*3, n. 2 (C.D.Ill. Aug.3, 2011) ("The plaintiff does not seem to be asserting that he had a First Amendment right to threaten the facilitators with lawsuits and grievances, nor does the Court believe that he has such a right."); *Ingram v. SCI Camp Hill,* 08–CV–0023, 2010 WL 4973302, at \*15 (M.D.Pa. Dec.1, 2010) ("Stating an intention to file a grievance is not a constitutionally protected activity."), *aff'd,* No. 11–1025, 2011 WL 4907821 (3d Cir. Oct.17, 2011); *Lamon v. Junious,* 09–CV–0484, 2009 WL 3248173, at \*3 (E.D.Cal. Oct.8, 2009) ("A mere threat to file suit does not rise to the level of a protected activity...."); *Miller v. Blanchard,* 04–CV–0235, 2004 WL 1354368, at \*6 (W.D.Wis. June 14, 2004) ("Plaintiff alleges that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

defendants retaliated against him after he threatened to file a lawsuit against them. Inmates do not have a First Amendment right to make threats.").

FN13. *McKinnie v. Heisz,* 09–CV–0188, 2009 WL 1455489, at *11 (W.D.Wis. May 7, 2009) ("Hoping to engage in constitutionally protected activity is not itself constitutionally protected activity. At most, petitioner's actions could be construed as a 'threat' to assert his rights but that is not enough.").

In any event, even assuming, for the sake of argument, that Plaintiff's statement was constitutionally protected, the Court finds, based on the current record, that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that his statement to Defendants Dinelle, Duckett, and Broekema that he would be contacting an attorney was a substantial or motivating factor for the issuance of the misbehavior report by Defendant Norton (which was signed by Defendant Dinelle as a witness), and the misbehavior report by Defendant Duckett (which was signed by Defendant DeLuca as a witness). The Court makes this finding for two alternate reasons.

**\*8** First, with regard to the misbehavior report issued by Defendant Norton, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that she was aware Plaintiff would be contacting an attorney. In addition, with regard to the report made by Defendant Duckett (which was signed by Defendant DeLuca as a witness), although there is record evidence that Defendant Duckett had knowledge of Plaintiff's statement that he would contact an attorney, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Duckett had reason to believe, at the time the misbehavior report was issued, Plaintiff would actually follow through with his one-time oral statement, made on the heals of a heated incident.

Second, even assuming that Defendant Duckett or Defendant Norton had reason to believe Plaintiff would contact an attorney, Plaintiff has failed to adduce

admissible record evidence from which a rational factfinder could conclude that Defendant Duckett or Defendant Norton would not have issued the misbehavior report anyway, based on Plaintiff's actions. Indeed, at Plaintiff's disciplinary hearings, evidence was adduced that he in fact committed most of the misconduct alleged in the misbehavior reports, which resulted in the hearing officer finding multiple violations and sentencing Plaintiff to SHU. FN14 Furthermore, those convictions were never subsequently reversed on administrative appeal. FN15 As a result, no admissible record evidence exists from which a rational factfinder could conclude that Plaintiff has established the third element of a retaliation claim—the existence of a causal connection between the protected speech and the adverse action.

FN14. *See Hynes v. Squillace,* 143 F.3d 653, 657 (2d Cir.1998) (holding that defendants met their burden of showing that they would have taken disciplinary action on valid basis alone where the evidence demonstrated that plaintiff had committed "the most serious, if not all, of the prohibited conduct"); *Jermosen v. Coughlin,* 86–CV–0208, 2002 WL 73804, at *2 (N.D.N.Y. Jan.11, 2002) (Munson, J.) (concluding, as a matter of law, that defendants showed by a preponderance of the evidence that they would have issued a misbehavior report against plaintiff even in the absence of his complaints against correctional department personnel, because they established that the misbehavior report resulted in a disciplinary conviction, "demonstrat[ing] that plaintiff in fact committed the prohibited conduct charged in the misbehavior report.").

FN15. For these reasons, the Court finds to be inapposite the case that Plaintiff cites for the proposition that the Court must accept as true his sworn denial that he committed any of the violations alleged in the misbehavior reports issued against him. *See Samuels v. Mockry,* 142 F.3d 134, 135–36 (2d Cir.1998) (addressing a situation in which a prisoner was placed in a prison's "Limited Privileges Program," upon a finding rendered by the prison's Program Committee, that he had refused to accept a

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

mandatory work assignment, *"without a hearing or a misbehavior report"* ) [emphasis added]. The Court would add only that, even if it were to accept Plaintiff's sworn denial as true, the Court would still find that he has failed to establish that Defendants Duckett and Norton would not have issued the misbehavior reports against him anyway, based on their subjective belief that he was acting in a disturbing, interfering, harassing and disobedient manner at the time in question (as evident from, *inter alia,* their misbehavior reports, the disciplinary hearing testimony of three of the Defendants, and admissions made by Plaintiff during his deposition regarding the "confusion" and "misunderstanding" that occurred during his examination by Defendant Norton, his persistent assertions about his prescribed frequency of visits, and his unsolicited comments about his proper course of treatment).

For each of these alternative reasons, Plaintiff's retaliation claim under the First Amendment is dismissed.

**B. Plaintiff's Claims Under the Eighth Amendment**

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's Eighth Amendment claims because (1) Plaintiff has failed to adduce any admissible evidence from which a rational factfinder could conclude that Defendant Norton used any force against Plaintiff, or was in a position to intervene to prevent the use of force against Plaintiff, yet failed to do so, (2) Plaintiff has failed to adduce any admissible evidence from which a rational factfinder could conclude that Defendant Broekema had a reasonable opportunity to intervene and prevent the alleged assault by Defendants Dinelle, DeLuca and Duckett, yet failed to do so, and (3) Plaintiff's identification of Defendant DeLuca is "very tentative."

As an initial matter, because Plaintiff did not oppose Defendants' argument that his excessive-force claim against Defendant Norton should be dismissed, Defendants' burden with regard to this claim "is lightened such that, in order to succeed, they need only show the facial merit of their request, which has appropriately been characterized as a 'modest' burden." *Xu–Shen Zhou v.*

*S.U.N.Y. Inst. of Tech.,* 08–CV–0444, 2011 WL 4344025, at *11 (N.D.N.Y. Sept.14, 2011)* (Suddaby, J.). After carefully considering the matter, the Court finds that Defendants have met this modest burden, for the reasons stated by them in their memoranda of law. The Court would add only that, based on its own independent review of the record, the Court can find no record evidence to support the claim that Defendant Norton used force against Plaintiff, or was in a position to intervene to prevent the use of force against Plaintiff, yet failed to do so. As a result, Plaintiff's Eighth Amendment claim against Defendant Norton is dismissed.

**\*9** Turning to Plaintiff's failure-to-intervene claim against Defendant Broekema, it is undisputed that it was Defendants Duckett, Dinelle and DeLuca who used force against Plaintiff. Plaintiff testified that, while Defendant Broekema was in the room at the time, Defendant Broekema was standing behind Defendant Dinelle on his "immediate right." In addition, Plaintiff testified that Defendant Duckett's threat of physical force against Plaintiff was conditioned on Plaintiff's continued failure to comply with (what Plaintiff perceived to be) conflicting instructions by Defendants Duckett and Dinelle during the frisk. (Dkt. No. 24, Attach. 4, at 97–99.) Furthermore, Plaintiff testified that it was only after he failed to put his hands in his pockets (rather soon after being warned by Defendant Duckett) that either Defendant Duckett or Defendant Dinelle punched him *one time* with a "closed fist" in the side of his nose, causing him to immediately fall to the ground. (*Id.* at 98–99.) Finally, Plaintiff testified that the kicks that he suffered soon after falling to the ground were limited in nature, having occurred only "a couple of times," and indeed having only *possibly* occurred. (*Id.* at 99.)

While the Court in no way condones the conduct alleged in this action, the Court is simply unable to find, based on the current record, that Plaintiff has adduced sufficient admissible record evidence to reach a jury on his Eighth Amendment claim against Defendant Broekema. Rather, based on the evidence presented, a rational factfinder could only conclude that the use of force was simply too uncertain for a reasonable person in Defendant Broekema's position to expect; and it was too brief in nature to give Defendant Broekema a realistic opportunity

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

to intervene in it, so as prevent the one punch and possibly few kicks that Plaintiff presumably experienced.[FN16]

> FN16. *See O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988) (noting that "three blows [that occurred] in such rapid succession ... [is] not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator"); *Blake v. Base,* 90–CV–0008, 1998 WL 642621, at *13 (N.D.N.Y. Sept.14, 1998) (McCurn, J.) (dismissing failure-to-intervene claim against police officer based on finding that the punch to the face and few body blows that plaintiff allegedly suffered "transpired so quickly ... that even if defendant ... should have intervened, he simply did not have enough time to prevent plaintiff from being struck"); *Parker v. Fogg,* 85–CV–0177, 1994 WL 49696, at *8 (N.D.N.Y. Feb.17, 1994) (McCurn, J.) (holding that an officer is not liable for failure-to-intervene if there "was no 'realistic opportunity' to prevent [an] attack [that ends] in a matter of seconds"); *see also Murray–Ruhl v. Passinault,* 246 F. App'x 338, 347 (6th Cir.2007) (holding that there was no reasonable opportunity for an officer to intervene when one officer stood by while another fired twelve shots in rapid succession); *Ontha v. Rutherford Cnty., Tennessee,* 222 F. App'x 498, 506 (6th Cir.2007) ("[C]ourts have been unwilling to impose a duty to intervene where ... an entire incident unfolds 'in a matter of seconds.' "); *Miller v. Smith,* 220 F.3d 491, 295 (7th Cir.2000) (noting that a prisoner may only recover for a correction's officer's failure to intervene when that officer "ignored a realistic opportunity to intervene").

Finally, based on the current record, the Court rejects Defendants' third argument (i.e., that Plaintiff's excessive-force claim against Defendant DeLuca should be dismissed because Plaintiff's identification of Defendant DeLuca is "very tentative"). Defendants argue that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant DeLuca was present during the use of force

against Plaintiff (let alone that Defendant DeLuca used force against Plaintiff). This is because Plaintiff's basis for bringing his excessive-force claim against Defendant DeLuca is that he remembered being assaulted by three individuals, including Defendants Dinelle and Duckett, whose last names began with the letter "D." While this fact is undisputed, it is also undisputed that Defendant DeLuca was interviewed by the Inspector General's Office regarding his involvement in the incidents giving rise to Plaintiff's claims,[FN17] and that both Defendant Broekema's use-of-force report, and Defendant Broekema's Facility Memorandum, state that Defendant DeLuca participated in the use of force against Plaintiff.[FN18] Based on this evidence, a rational factfinder could conclude that Defendant DeLuca violated Plaintiff's Eighth Amendment rights. As a result, Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca survives Defendants' motion for summary judgment. The Court would add only that, although it does not construe Plaintiff's Complaint as alleging that Defendant DeLuca failed to intervene in the use of force against Plaintiff, assuming, (based on Plaintiff's motion papers) that Plaintiff has sufficiently alleged this claim, the claim is dismissed because the entirety of the record evidence as it pertains to Defendant DeLuca establishes that he used force against Plaintiff.

> FN17. (Dkt. No. 27, Attach. 2, at 19–20.)

> FN18. (Dkt. No. 27, Attach. 2, at 10, 14.)

**C. Plaintiff's Claim Under the Fourteenth Amendment**

**\*10** As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because Defendants did not deprive Plaintiff of his liberty rights. As stated above in note 2 of this Decision and Order, Plaintiff failed to address Defendants' argument that his substantive due process claim should be dismissed. As a result, as stated above in Part III.B. of this Decision and Order, Defendants' burden with regard to this claim "is lightened such that, in order to succeed, they need only show the facial merit of their request, which has appropriately been characterized as a 'modest' burden." *Xu–Shen Zhou,* 2011 WL 4344025, at *11.

After carefully considering the matter, the Court finds

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

that Defendants have met this modest burden, for the reasons stated by them in their memoranda of law. The Court would add only that, based on its own independent review of the record, although the record evidence establishes that Plaintiff was confined in SHU for 150 days as a result of the misbehavior reports issued by Defendants Norton and Duckett, Plaintiff has failed to adduced admissible record evidence from which a rational factfinder could conclude that the conditions of his confinement during this 150–day period were more severe than normal SHU conditions.[FN19] As a result, Plaintiff's substantive due process claim is dismissed.

> FN19. *See Spence v. Senkowski,* 91–CV–0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (finding that 180 days that plaintiff spent in SHU, where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217–19 (W.D.N.Y.1998) (180 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353–56 (W.D.N.Y.1997) (161 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96–CV–2003, 1997 WL 137448, at *4–6 (S.D.N.Y.1997) (192 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116–17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94–CV–4094, 1996 WL 487951, at *4–5 (S.D.N.Y. Aug.27, 1996) (210 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103–04 (W.D.N.Y.1995) (270 days in SHU under numerous conditions of confinement that

were more restrictive than those in general population).

**D. Defendants' Defense of Qualified Immunity**

As stated above in Part I.C. of this Decision and Order, Defendants seek dismissal of Plaintiff's claims on the alternative ground that they are protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances.

**1. Retaliation**

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 [1982] ). Here, even assuming that Plaintiff's statement that he would contact an attorney regarding the use of force he experienced constitutes engagement in protected activity, and even also assuming that the only reason Defendant Norton and/or Duckett issued Plaintiff a misbehavior report was because he made this statement, these Defendants are, under the circumstances, entitled to qualified immunity. This is because the Court finds that the right to make this statement (without experiencing any resulting adverse action) was not a clearly established during the time in question (January 2009), based on a review of the relevant case law. *See, supra,* notes 12 and 13 of this Decision and Order.

As a result, Plaintiff's retaliation claim is dismissed on the alternate ground of qualified immunity.

**2. Excessive Force**

There is no doubt that the right to be free from the use of excessive force was "clearly established" at the time of the incidents giving rise to Plaintiff's claims. *See, e.g., Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Moreover, with regard to whether it was objectively reasonable for Defendants to use the alleged amount of force that they used, the Second Circuit has made clear that, "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin,* 297 F.3d 114, 122 (2d Cir.2002) [internal quotation marks omitted].

**\*11** Here, after carefully reviewing the record, and construing it in the light most favorable to Plaintiff, the Court finds that, even if Defendants Dinelle, DeLuca and Duckett genuinely feared being assaulted by Plaintiff, and even if those three Defendants genuinely perceived Plaintiff's words and movements to constitute an attempt to resist a frisk, admissible record evidence exists from which a rational jury could conclude that those perceptions were not objectively reasonable under the circumstances. As the Second Circuit has observed, it is impossible to "determine whether [Defendants] reasonably believed that [their] force was not excessive when several material facts [are] still in dispute, [and therefore,] summary judgment on the basis of qualified immunity [is] precluded." *Thomas v. Roach,* 165 F.3d 137, 144 (2d Cir.1999).[FN20] For these reasons, the Court rejects Defendants' argument that Plaintiff's excessive-force claim should be dismissed on the ground of qualified immunity as it relates to Defendants Dinelle, DeLuca and Duckett.

> FN20. *See also* *Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) ( "[T]he parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon]. Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment.").

However, the Court reaches a different conclusion with regard to Plaintiff's failure-to-intervene claim against Defendant Broekema: the Court finds that, at the very least, officers of reasonable competence could disagree on the legality of Defendant Broekema's actions, based on the current record. As a result, Plaintiff's failure-to-intervene claim against Defendant Broekema is dismissed on this alternative ground.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for partial summary judgment (Dkt. No. 24) is ***GRANTED*** in part and ***DENIED*** in part in the following respects:

(1) Defendants' motion for summary judgment on Plaintiff's First Amendment claim is ***GRANTED;***

(2) Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment substantive due process claim is ***GRANTED;***

(3) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton is ***GRANTED;***

(4) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema is ***GRANTED;*** and

(5) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca is ***DENIED;*** and it is further

**ORDERED** that the following claims are ***DISMISSED*** with prejudice from this action:

(1) Plaintiff's First Amendment claim;

(2) Plaintiff's Fourteenth Amendment substantive due process claim;

(3) Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton; and

(4) Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema; and it is further

**ORDERED** that Defendants Norton and Broekema are ***DISMISSED*** from this action; and it is further

**ORDERED** that, following this Decision and Order, the following claims remain pending in this action: Plaintiff's Eighth Amendment excessive-force claim against Defendants DeLuca, Dinnelle and Duckett; and it is further

**\*12 ORDERED** that counsel are directed to appear

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

on **JANUARY 4, 2012 at 2:00 p.m.** in chambers in Syracuse, N.Y. for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **DECEMBER 16, 2011,** and the parties are directed to engage in meaningful settlement negotiations prior to the 1/4/12 conference.

N.D.N.Y.,2011.

Henry v. Dinelle
Slip Copy, 2011 WL 5975027 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

2013 WL 5567321
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Fort Myers Division.

Norman Wayne JONES, Plaintiff,

v.

Scott SALLEY, Beth Richards, Kevin
McGowan, and Mike Epperson, Defendants.

No. 2:12–cv–510–FtM–29DNF.
|
Oct. 9, 2013.

**Attorneys and Law Firms**

Norman Wayne Jones, Malone, FL, pro se.

Christy Michelle Runkles, Purdy, Jolly, Giuffreda &
Barranco, PA, Ft Lauderdale, FL, for Defendants.

**OPINION AND ORDER**

JOHN E. STEELE, District Judge.

**\*1** This matter comes before the Court upon review
of Defendants' Motion to Dismiss (Doc. # 42, Motion)
Plaintiff's Second Amended Complaint, filed June 5,
2013. Plaintiff filed a response in opposition (Doc. # 44,
Response). This matter is ripe for review.

**I. Background and Facts**

Plaintiff Norman Jones, a Florida prisoner, initiated this
action proceeding *pro se* by filing a Civil Rights Complaint
Form (Doc. # 1) pursuant to 42 U.S.C. § 1983 concerning
events that occurred during his detention at the Collier
County Jail. The Court granted Plaintiff's motion for
leave to proceed *in forma pauperis. See* Doc. # 9. On
March 28, 2013, the Court granted Defendants' motion
for a more definite statement. *See* Doc. # 35. The Court
warned Plaintiff about the provisions of Fed.R.Civ.P. 8
and 10. *Id.* at 1. The Court then ordered Plaintiff to file a
Second Amended Complaint containing only those facts
supporting his alleged failure to protect claim. *See id.* at
4–5.

Plaintiff is proceeding on his Second Amended Complaint
(Doc. # 41), which names the following defendants
from the Collier County Jail: Scott Salley, who Plaintiff
identifies as the "chief 'over the jail' "; Captain Beth
Richards, Commander Kevin McGowan, and Lieutenant
Mike Epperson. *Id.* at 3–4. According to the Second
Amended Complaint, Defendant McGowan removed
Plaintiff from the "protected custody dorm" and placed
him in "general population" in retaliation for Plaintiff
filing grievances. *Id.* at 6. Plaintiff alleges that every
day for eight months he was "verbally and physically"
assaulted by other prisoners. *Id.* Plaintiff claims each
defendant knew that the other inmates treated Plaintiff
this way, but they failed to protect him. *Id.* As relief,
Plaintiff seeks $50,000 in monetary damages for "pain
and suffering," and "mental anguish." *Id.* Plaintiff also
requests that the Court direct Sheriff Kevin Rambosk,
who is no longer a Defendant, to "reevaluate his
administration in the jail." *Id.* at 7.

Defendants move to dismiss pursuant to Fed.R.Civ.P.
12(b)(6). *See generally* Motion. Defendants argue that
the Court must dismiss the action because the Second
Amended Complaint is full of conclusory and vague
allegations. *Id.* at 3. In sum, Defendants submit that
Plaintiff basically alleges that he was harassed by all the
prisoners in general population and Defendants failed
to do anything about it. *Id.* Defendants point out that
Plaintiff has not shown how he was harmed or injured. *Id.*

**II. Standard of Review**

**A. Motion to Dismiss Standard**
In deciding a Rule 12(b)(6) motion to dismiss, the Court
limits its consideration to well-pleaded factual allegations,
documents central to or referenced in the complaint, and
matters judicially noticed. *La Grasta v. First Union Sec.,
Inc.,* 358 F.3d 840, 845 (11th Cir.2004). Thus, the Court
must accept all factual allegations in Plaintiff's Complaint
as true and take them in the light most favorable to
the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284
(11th Cir.2008). Conclusory allegations, however, are not
entitled to a presumption of truth. *Ashcroft v. Iqbal,* 556
U.S. 662, 681, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)
(discussing a 12(b)(6) dismissal); *Marsh v. Butler County,
Ala.,* 268 F.3d 1014, 1036 n. 16 (11th Cir.2001).

**\*2** The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. *Randall v. Scott,* 610 F.3d 701, 708, n. 2 (11th Cir.2010). A claim is plausible where the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Marsh,* 268 F.3d at 1036 n. 16. Specifically, "[w]hile a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Thus, "the-defendant-unlawfully-harmed-me accusation" is insufficient. *Iqbal,* 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *See Twombly,* 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (abrogating in part *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Additionally, there is no longer a heightened pleading requirement. *Randall,* 610 F.3d at 701. Because Plaintiff is proceeding pro se, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. *Hughes v. Lott,* 350 F.3d 1157, 1160 (11th Cir.2003) (citing *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir.1998)).

**B. § 1915 Standard**

The Prison Litigation Reform Act requires that the Court review all complaints filed by prisoners against a governmental entity to determine whether the action is "frivolous, malicious, or fails to state a claim upon which relief can be granted; or seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A (a), (b)(1), (b)(2).[1] In essence, § 1915A is a screening process to be applied *sua sponte* and at any time during the proceedings. In reviewing a complaint, however, the Court accepts the allegations in the complaint as true, *Boxer v. Harris,* 437 F.3d 1107, 1110 (11th Cir.2006), and applies the long established rule

that *pro se* complaints are to be liberally construed and held to a less stringent standard than pleadings drafted by attorneys, *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted).

Pursuant to § 1915A, the Court "shall" dismiss the complaint, if, *inter alia,* it fails to state a claim upon which relief may be granted. *See also* § 1915(e)(2). The standards that apply to a dismissal under Fed.R.Civ.P. 12(b)(6) apply to a dismissal under § 1915A. *Leal v. Georgia Dep't of Corr.,* 254 F.3d 1276, 1278–79 (11th Cir.2001).

**III. Analysis**

**A. Failure to Protect Claim**

**\*3** The Court finds the Second Amended Complaint subject to dismissal, without prejudice, for failure to state a failure to protect claim. The Supreme Court made clear that "prison officials have a duty ... to protect prisoners from violence ..." *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also Doe v. Georgia Dep't of Corr.,* 245 F. App'x 899 (11th Cir.2007). A violation of the Eighth Amendment[2] occurs when a prison official acts with deliberate indifference to a substantial risk of harm to an inmate. *Farmer,* 511 U.S. at 828. "Deliberate indifference is not the same thing as negligence or carelessness." *Maldonado v. Snead,* 168 F. App'x 373 (11th Cir.2006) (citing *Ray v. Foltz,* 370 F.3d 1079, 1083 (11th Cir.2004)). "Merely negligent failure to protect" an inmate from an attack does not give rise to a § 1983 claim. *Carter v. Galloway,* 352 F.3d 1346, 1350 (11th Cir.2003).

A plaintiff must demonstrate that the defendant was aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists and that the prison official drew that inference. *Purcell v. Toombs County, GA.,* 400 F.3d 1313, 1319–20; *Carter,* 352 F.3d at 1349. In other words, to show that an official had subjective knowledge, the court is to inquire whether the defendant was aware of a "particularized threat or fear felt by [the plaintiff]." *Id.* at 1350. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot ... be condemned as the infliction of punishment" and does not give rise to a constitutional violation. *Farmer,* 511 U.S. at 838. Whether an official had requisite

knowledge is a question of fact that may be demonstrated by circumstantial evidence. *Id.* at 842.

Here, the Second Amended Complaint does not contain sufficient factual allegations to support a failure to protect claim against Defendants from the Collier County Jail. The Second Amended Complaint generally alleges that he was subjected to "verbal harassment" and "physical assaults" "every day" for an eight month period. Verbal harassment does not arise to the level for an Eighth Amendment violation. *Edwards v. Gilbert,* 867 F.2d 1271, 1274 n. 1 (11th Cir.1989) (verbal taunts not sufficient to constitute constitutional deprivation). To the extent Plaintiff claims that he was "physically assaulted" by other inmates, the Amended Complaint does not specify when specifically the physical assaults took place, how they took place, who assaulted him, whether he sustained any injuries, and/or whether treatment was rendered for those injuries. To the extent these correctional officers did not protect Plaintiff from other inmates spitting on him, this allegation, without more, cannot reasonably be perceived as presenting a substantial risk of serious harm. *See Kocher v. Luzerne County Corr. Facility,* Case No. 1:11–cv–1000, 2011 WL 2470382 (M.D.Pa. June 20, 2011) (finding no deliberate indifference when defendant failed to protect plaintiff from an inmate who spit on plaintiff); *York v. Jackson,* Case No. 2:08–cv–547 (JCC/TRJ), 2008 WL 2641268 *3 (E.D.Va. July 2, 2008) (being spat on does not amount to cruel and unusual punishment). Moreover, to the extent the Second Amended Complaint alleges that Plaintiff was physically assaulted "every day" for an eight month period, without further factual support, such allegations appear fantastic and exaggerated. *Bilal v. Driver,* 251 F.3d 1346, 1350 (11th Cir.2001) (noting district court properly questioned plaintiff's credibility when factual allegations appeared "so magnified and fantastic").

### B. Retaliation Claim

**\*4** Similarly, the Second Amended Complaint fails to state sufficient facts supporting a retaliation claim against Defendant McGowan. *See* Second Amended Complaint

at 6 ("McGowan took me out of the (protected custody dorm) and placed in general population dorm. Locked down 24/7, being vindictive, and retaliating for the grievances Plaintiff filed on him.") (errors in original). Prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1968) (per curiam). To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *O'Bryant v. Finch,* 637 F.2d 1207, 1212 (11th Cir.2011) (internal quotations omitted); *Moton v. Cowart,* 631 F.3d 1337, 1341–42 (11th Cir.2011). "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." *Moton,* 631 F.3d at 1341 (quoting *Smith v. Mosley,* 532 F.3d 1270, 1278 (11th Cir.2008)). The Second Amended Complaint does not contain any factual allegations satisfying the second and third elements. Consequently, pursuant to § 1915, the Court dismisses any retaliation claim against Defendant McGowan.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Defendants' motion to dismiss (Doc. # 42) is **GRANTED.** The case is dismissed against all Defendants, without prejudice.

2. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 5567321

Footnotes

1    The language in section 1915(e)(2)(B)(ii) is identical to the screening language of § 1915A.

2    If Plaintiff was a pretrial detainee at the county jail, then his rights arise under the Fourteenth Amendment. Nevertheless, the standard for a failure to protect claim arising under either the Fourteenth or the Eighth Amendment are the same.

*Cook ex. rel Estate of Tessier v. Sheriff of Monroe County, Fla.,* 402 F.3d 1092, 1115 (11th Cir.1985); *Hamm v. DeKalb County,* 774 F.2d 1567 (11th Cir.1985).

---

**End of Document**
© 2017 Thomson Reuters. No claim to original U.S. Government Works.

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 2470382
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Stanley E. KOCHER, Plaintiff,

v.

LUZERNE COUNTY CORRECTIONAL
FACILITY, et al., Defendants.

Civil No. 1:11–CV–1000.
|
June 20, 2011.

**Attorneys and Law Firms**

Stanley E. Kocher, Wilkes Barre, PA, pro se.

**MEMORANDUM**

Hon. JOHN E. JONES III, Judge.

**\*1 THE BACKGROUND OF THIS MEMORANDUM
IS AS FOLLOWS:**
Plaintiff Stanley E. Kocher ("Plaintiff" or "Kocher"),
an inmate presently confined at the Luzerne County
Correctional Facility in Wilkes Barre, Pennsylvania,
initiated the above action *pro se* by filing a civil rights
Complaint under the provisions of 42 U.S.C. § 1983. (Doc.
1.) He also has filed a Motion for leave to proceed *in forma
pauperis.* (Doc. 2), and therefore, the Complaint presently
is before the Court for screening under the provisions of 28
U.S.C. § 1915. For the reasons set forth below, the request
for *in forma pauperis* status will be granted for the sole
purpose of filing the Complaint, and the Complaint will be
dismissed with prejudice for failure to state a claim upon
which relief may be granted.

In his Complaint, filed on May 25, 2011, Kocher
names the Luzerne County Correctional Facility and
Correctional Officer Wolfe as Defendants. (Doc. 1 at 2 §
III.) He alleges that, on May 11, 2011 at 8:10 a.m., he was
working in Unit L–2 when another inmate spit on him. (*Id.*
§ IV ¶ 1.) Kocher went to Correctional Officer Wolfe and
asked if there was some place that he could wash. (*Id.* ¶¶
1–2.) Wolfe and another correctional officer Kocher does
not know asked if Kocher would like to go to the Nurse's
Office, and he indicated that he would. (*Id.* ¶ 2.)

When he was at the Nurse's Office, Kocher asked the
nurses who were working if the inmate who spit on him
had any medical problems, such as HIV, AIDS, Hepatitis
C, *et cetera.* (*Id.* ¶ 3.) The nurses stated that they could not
give out that information. (*Id.*)

Kocher then alleges that he is not allowed to work in
the L–2 lock up area now and that he sits and worries
that he might have HIV "because a lot of people say he
does." (*Id.* at 3 ¶ 4.) Kocher also states that he feels he is
being punished and that he has been losing sleep and even
got on medication. (*Id.*) He further explains that he does
not understand how a staff member correctional officer
could press charges for simple assault, but he is not even
being asked. (*Id.*) He states, "I fe[e]l my right[s] have been
violated some how." (*Id.*)

As relief, Kocher requests that charges be brought against
this inmate and explains that he would like to be
compensated for pain and suffering and for money for his
court fees. (*Id.* at 4 § V.) He also states that he would like
to have the prison system know that even though he is a
prisoner, he is human. (*Id.*)

**I. STANDARD OF REVIEW**
Under 28 U.S.C. § 1915(e)(2)(B)(ii), a federal court
must dismiss a case filed *in forma pauperis* if the court
determines that the complaint "fails to state a claim
on which relief may be granted." In reviewing the legal
sufficiency of a complaint, the Court must accept the
truth of the plaintiff's factual allegations. *Morrison v.
Madison Dearborn Capital Partners III L.P.,* 463 F.3d 312,
314 (3d Cir.2006). The controlling question is whether
the complaint "alleges enough facts to state a claim to
relief that is plausible on its face." *Bell Atlantic Corp. v.
Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d
929 (2007) (rejecting the "no set of facts" language from
*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2
L.Ed.2d 80 (1957)); *see also Ashcroft v. Iqbal,* ___ U.S.
___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

**\*2** "While a complaint attacked by a Rule 12(b)
(6) motion to dismiss does not need detailed factual
allegations, a plaintiff's obligation to provide the 'grounds'
of his 'entitle[ment] to relief' requires more than labels
and conclusions, and a formulaic recitation of a cause of
action's elements will not do." *Twombly,* 550 U.S. at 555
(citation omitted). To survive a motion to dismiss, the

factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

Pro se pleadings are to be construed liberally, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend ... unless such an amendment would be inequitable or futile." *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir.2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital,* 293 F.3d 103, 108 (3d Cir.2002).

## II. DISCUSSION

Preliminarily, we observe that it is apparent from the face of the Complaint that Kocher failed to exhaust administrative remedies before initiating this action. He states at the outset of his Complaint that he has not filed a grievance concerning the facts relating to his Complaint because he "felt that it would do no good and it is hard just to have one given to you." (Doc. 1 at 1 § II.) The Prison Litigation Reform Act ("PLRA") requires inmates to present their claims through an administrative grievance process before filing suit in federal court. Specifically, section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to **all** inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (emphasis added).

" '[I]t is beyond the power of this court—or any other —to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.' " *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894–95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also mandates that inmates

"properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

**\*3** Failure to exhaust administrative remedies is an affirmative defense to be raised by a defendant, and therefore, the burden is on a defendant to plead and prove it. *See Ray v. Kertes,* 285 F.2d 287, 295 (3d Cir.2002). Moreover, because the defense can be waived, it may not provide grounds for the dismissal of the instant Complaint on screening.[1] *See id.* Accordingly, we shall turn to a consideration of the allegations contained in Kocher's Complaint.

In beginning our screening process, we observe that the Luzerne County Correctional Facility is not a proper Defendant in this § 1983 action. To state a § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. *Nicini v. Morra,* 212 F.3d 798, 806 (3d Cir.2000). A prison is not a "person" within the meaning of 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Phippen v. Nish,* 223 Fed. Appx. 191, 192 (3d Cir.2007) (citing *Fischer v. Cahill,* 474 F.2d 991, 992 (3d Cir.1971)). Consequently, Kocher cannot state a claim upon which relief may be granted against the Luzerne County Correctional Facility, and the dismissal of his claims against this Defendant with prejudice is therefore appropriate.

Turning to Kocher's claim against the remaining Defendant, Correctional Officer Wolfe, we find that Kocher fails to state a claim upon which relief may be granted against this Defendant. Kocher alleges that he was spit on by another inmate while he was working and that, when he asked Defendant Wolfe if there was somewhere that he could wash up, Wolfe and another correctional officer offered him the opportunity to go to the Nurse's Office, which he accepted. (*See* Doc. 1 at 2 § IV ¶¶ 1–2.) We construe Kocher's claim against Wolfe as an Eighth Amendment failure to protect claim. Prison officials and employees may be held liable if they are deliberately indifferent to a substantial risk of serious harm to an inmate. *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To state an Eighth Amendment failure to protect claim upon which relief may

be granted, Kocher must allege "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hamilton v. Leavy,* 117 F.3d 742, 747 (3d Cir.1997).

Kocher has not alleged facts from which it can reasonably be inferred that he was subjected to a substantial risk of serious harm. His allegation that he was spit on, without more, cannot reasonably be perceived as presenting a substantial risk of serious harm. He merely speculates that the inmate who spit on him *may* have exposed him to a risk of harm *if* he has a contagious disease. More significantly, Kocher has not alleged facts from which it can reasonably be inferred that Defendant Wolfe was aware of a substantial risk of serious harm to him or that he was deliberately indifferent to such a risk. In particular, Kocher's allegation that Defendant Wolfe

offered him help after he was spit on by sending him to the Nurse's Office does not suggest deliberate indifference on his part. As a result, Kocher fails to state an Eighth Amendment failure to protect claim against Defendant Wolfe. Further, where Kocher has admitted that Wolfe's role in the incident that forms the basis for his Complaint was limited to offering Kocher help after the incident, no amendment to his allegations would enable him to state a claim against Defendant Wolfe. Thus, amendment would be futile, and dismissal of Kocher's Complaint will be with prejudice. *Alston,* 363 F.3d at 235; *Grayson,* 293 F.3d at 108. An appropriate Order will enter.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 2470382

Footnotes

1    On a related note, with regard to Kocher's general allegation within his Complaint that he feels that his rights have been violated somehow in that he has not been asked whether he wants to seek to press charges against the inmate who spit on him (*see* Doc. 1 at 3 ¶ 4), we observe that, to the extent that Kocher wished to voice a request that criminal charges be filed against the inmate, he could have presented such a request in a prison grievance. The filing of a civil rights action is not the appropriate method to request the filing of criminal charges.

---

                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2017 Thomson Reuters. No claim to original U.S. Government Works.   3

2010 WL 3199854
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
E.D. Louisiana.

Jason KRON

v.

Robert C. TANNER, Warden, et al.

Civil Action No. 10–518.
|
May 19, 2010.

**Attorneys and Law Firms**

Jason Kron, Angie, LA, pro se.

*PARTIAL REPORT AND RECOMMENDATION*

DANIEL E. KNOWLES, III, United States Magistrate
Judge.

**\*1** Plaintiff, Jason Kron, a state prisoner, filed this civil
rights action pursuant to 42 U.S.C. § 1983. In the original
complaint, he named the following defendants: Robert
C. Tanner, the warden of the B.B. "Sixty" Rayburn
Correctional Center; Dr. Dennis LaRavia, a physician at
that facility; and James M. LeBlanc, the Secretary of the
Louisiana Department of Public Safety and Corrections.
Plaintiff claimed that the defendants failed to protect
him from violence at the hands of other inmates and
failed to provide him with adequate medical care.[1]
Plaintiff subsequently filed an amended complaint, adding
excessive force claims against two new defendants, Officer
David Alford and Lieutenant Ronnie Seal.[2]

Due to the rambling nature of plaintiff's complaint, the
Court ordered him to file a concise Statement of Facts in
support of his claims.[3] The Court also ordered Warden
Tanner to submit the following records for the Court's
review: (1) plaintiff's medical records from the prison;
(2) all notifications, complaints, and grievances plaintiff
submitted to prison officials concerning his purported
enemies at the prison and his need for protection; and

(3) all of plaintiff's disciplinary records, including appeals
and responses, relating to incidents of fighting or other
violence.[4] The Statement of Facts and the prison records
have been filed into this federal record.[5]

*I. Standards of Review*

Federal law mandates that federal courts "review, before
docketing, if feasible or, in any event, as soon as
practicable after docketing, a complaint in a civil action
in which a prisoner seeks redress from a governmental
entity or officer or employee of a governmental entity." 28
U.S.C. § 1915A(a). Regarding such lawsuits, federal law
further requires:

> On review, the court shall identify cognizable claims or
> dismiss the complaint, or any portion of the complaint,
> if the complaint—
>
> (1) is frivolous, malicious, or fails to state a claim
> upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is
> immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma
pauperis,* such as the instant lawsuit, federal law similarly
provides:

> Notwithstanding any filing fee, or any portion thereof,
> that may have been paid, the court shall dismiss the case
> at any time if the court determines that ... the action or
> appeal—
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be
> granted; or
>
> (iii) seeks monetary damages against a defendant who
> is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis
in law or fact." *Reeves v. Collins,* 27 F.3d 174, 176 (5th
Cir.1994). In making a determination as to whether a
claim is frivolous, the Court has "not only the authority

to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Macias v. Raul A. (Unknown), Badge No. 153,* 23 F.3d 94, 97 (5th Cir.1994).

**\*2** A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir.2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing the original and amended complaints, [6] the Court nevertheless finds that, for the following reasons, many of plaintiff's claims must be dismissed as frivolous, for failure to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

*II. Official–Capacity Claims*

To the extent that plaintiff is seeking monetary damages against the defendants in their official capacities, those claims must be dismissed for the following reasons.

Defendants Tanner, LaRavia, Alford, and Seal are employed at the B.B. "Sixty" Rayburn Correctional Center. They, along with defendant LeBlanc, are officials or employees of the Louisiana Department of Public Safety and Corrections. *See, e.g., Tyson v. Reed,* Civ. Action No. 09–7619, 2010 WL 360362, at \*4 (E.D.La. Jan. 21, 2010); *Searls v. Louisiana,* Civ. Action No. 08–4050, 2009 WL 653043, at \*6 (E.D.La. Jan. 21, 2009); *Demouchet v. Rayburn Correctional Center,* Civ. Action No. 07–1694, 2008 WL 2018294, at \*3 (E.D.La. May 8, 2008). State officials and employees sued in their official capacities for monetary damages are not "persons" subject to suit under 42 U.S.C. § 1983. *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989); *Stotter v. University of Texas,* 508 F.3d 812, 821 (5th Cir.2007); *American Civil Liberties Union v. Blanco,* 523 F.Supp.2d 476, 479 (E.D.La.2007); *Tyson,* 2010 WL 360362, at \*4; *Searls,* 2009 WL 653043, at \*6; *Demouchet,* 2008 WL 2018294, at \*3.

Moreover, the official-capacity claims also fail for an additional reason. Because a claim against a state official or employee in his official capacity for monetary damages is actually a claim against the state itself, such claims are barred by the Eleventh Amendment. *Williams v. Thomas,* 169 Fed. App'x 285, 286 (5th Cir.2006); *Tyson,* 2010 WL 360362, at \*4; *Searls,* 2009 WL 653043, at \*6; *Demouchet,* 2008 WL 2018294, at \*3.

**\*3** As to plaintiff's federal claims against the defendants in their individual capacities or in any capacity for injunctive or declaratory relief, [7] many of those claims should be dismissed as frivolous and for otherwise failing to state a claim on which relief may be granted for the following reasons.

*III. Failure–to–Protect Claims*

Plaintiff claims that defendants LeBlanc, Tanner, Alford, and Seal failed to protect him from being attacked by other inmates. The United States Supreme Court has noted:

[A]s the lower courts have uniformly held, and as we have assumed, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Farmer v. Brennan,* 511 U.S. 825, 833–34 (1994) (citations, footnote, quotation marks, ellipsis, and brackets omitted).

That said, "[i]t is not ... every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Rather, to establish a failure-to-protect claim under § 1983, a prisoner must make two showings. First, he "must show that he was incarcerated under conditions posing a *substantial* risk of *serious* harm." *Id.* (emphasis added). Second, he must show that the prison officials sued had a "sufficiently culpable state of mind." *Id.* (quotation marks omitted). Therefore, it must be shown that those officials were "*deliberately indifferent* to [the prisoner's] need for protection." *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir.1995) (emphasis added). The United States Fifth Circuit Court of Appeals has explained:

An official acts with the requisite deliberate indifference if he is aware of an *excessive risk* to inmate safety and *disregards* that risk. In this

context, an officer's awareness of the risk is evaluated subjectively. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must in fact also have drawn the inference. No liability exists, however, if an official reasonably responded to a known substantial risk, even if the harm was ultimately not averted.

*Longoria v. Texas,* 473 F.3d 586, 592–93 (5th Cir.2006) (emphasis added; citations, quotation marks, brackets, and ellipsis omitted). Further, "[d]eliberate indifference must be viewed from [the official's] perspective at the time in question, not with hindsight's perfect vision." *Jackson v. Everett,* 140 F.3d 1149, 1152 (8th Cir.1998); *Morrison v. Gusman,* Civ. Action No. 10–217, 2010 WL 724173, at *6 n. 9 (E.D.La. Feb. 22, 2010); *Bland v. Terrebonne Parish Criminal Justice Complex,* Civ. Action No. 09–4407, 2009 WL 3486449, at *6 (E.D.La. Oct. 23, 2009). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County, Texas,* 245 F.3d 447, 459 (5th Cir.2001).

**\*4** In his Statement of Facts, plaintiff alleges that the defendants failed to protect him from the following incidents:

1. May 2, 2008: Inmate Ali Barconey punched and hit plaintiff in the back of the head with a metal object. [8]

2. May 14, 2008: Inmate Kumoul Jackson threw ice at plaintiff. [9]

3. May 15–31, 2008: Kumoul Jackson threw bars of soap and food at plaintiff. [10]

4. May or June, 2008: Ali Barconey threw a bar of soap at plaintiff. [11]

5. Nov. 16–17, 2008: Inmate Casie Morrison punched plaintiff in the face several times. [12]

6. Dec. 1–4, 2008: Inmate Dave Edwards spat in plaintiff's face. [13]

7. Dec. 31, 2008: Inmate Claude Dillon threw urine into plaintiff's cell. [14]

8. July 7, 2009: Inmate Roscoe Medius punched and spat at and plaintiff. [15]

9. July 29, 2009: Inmate Antonio Williams punched plaintiff several times. [16]

Many of those incidents are of no moment with respect to plaintiff's failure-to-protect claim. Specifically, the second, third, fourth, and seventh incidents, which involved the throwing of ice, soap bars, food, and urine, while clearly annoying, did not pose substantial risk of *serious* harm. The same is true of the sixth incident involving spitting. *See Shaw v. Breen,* No. 08–cv–490, 2008 WL 4279650, at *2 (W.D.Wis. Sept. 16, 2008); *Hall v. Pennington,* No. Civ. 06–264, 2006 WL 2223979, at *2 (D.Del. Aug. 2, 2006); *Wolfgang v. Pennsylvania Department of Corrections,* No. 4:CV–02–1680, 2006 WL 709402, at *9 (M.D.Pa. Mar. 20, 2006).

When those incidents are disregarded, only four incidents remain: the alleged attacks by Ali Barconey on May 2, 2008, Casie Morrison on Nov. 16–17, 2008, Roscoe Medius on July 7, 2009, and Antonio Williams on July 29, 2009. Assuming that those attacks posed a substantial risk of serious harm to plaintiff, the Court must consider whether the allegations are sufficient to state a claim that defendants LeBlanc and Tanner were deliberately indifferent to plaintiff's need for protection from that harm. They clearly are not. [17]

In his Statement of Facts, plaintiff indicates that he first notified LeBlanc of the safety issues in an administrative grievance he filed against Tanner on December 10, 2009. [18] That grievance was submitted long *after* the alleged attacks. Accordingly, there is no evidence that LeBlanc had *prior* knowledge of any dangers allegedly posed to plaintiff by Barconey, Morrison, Medius, or Williams. Without such prior notice, the claim fails because LeBlanc cannot be said to have been deliberately indifferent for failing to protect against a potential harm of which he was unaware. *Farmer v. Brennan,* 511 U.S. 825, 844 (1994); *Bland v. Terrebonne Parish Criminal Justice Complex,* Civ. Action No. 09–4407, 2009 WL 3486449, at *6 (E.D.La. Oct. 23, 2009).

Similarly, there is no indication that Tanner had any prior notice of the dangers. In his Statement of Facts, plaintiff states that he provided Tanner with several notices. However, those notices, recounted below, do not support the failure-to-protect claim.

**\*5** First, plaintiff states that he first advised Warden Tanner of the safety issues in the latter part of May of 2008. [19] However, that notice is of no relevance, in that it also was written *after* the incident with Barconey occurred and it made no mention of dangers allegedly posed by Morrison, Medius, or Williams. [20]

Second, plaintiff states that he wrote to Tanner in November of 2008 regarding placement in a cell with Morrison. [21] However, again, that notice was sent to Tanner *after* the incident in which plaintiff was punched by Morrison. [22] Moreover, plaintiff states that he was questioned about the notice and "immediately" transferred into protective custody. Therefore, the notice clearly was not met with deliberate indifference on the part of prison authorities.

Third, plaintiff states that he wrote to Tanner in December of 2008 regarding dangers posed by "Ali Barconey and his friends." [23] Again, that notice was *after* the alleged attacks by Barconey and Morrison and made no mention of any danger posed by Medius or Williams.

Fourth, plaintiff states that he informed "classification" of a danger posed by Medius, his cellmate, on July 8, 2009. [24] However, that notice was likewise sent *after* the incident involving Medius. [25] Moreover, again, the notice was not met with deliberate indifference; rather, plaintiff was questioned regarding the notice and, in response, officials moved Medius to another cell. Additionally, the notice made no mention of any danger posed by Williams.

In light of the foregoing, there is no evidence that either LeBlanc or Tanner had *prior* warning of the dangers posed to plaintiff by Barconey, Morrison, Medius, or Williams. Moreover, as noted, prison officials did not disregard plaintiff's complaints regarding his safety. On the contrary, he was told that he simply must follow the prison rules regarding requests for protection and, when he did so, his concerns were in fact addressed.

Lastly, with respect to these claims, the Court believes two other observations are in order.

First, it is clear from the record that the true crux of plaintiff's discontent is that prison officials would not transfer him from a facility where he was unhappy, the B.B. "Sixty" Rayburn Correctional Center, to one he believed he would prefer, the Elayn Hunt Correctional Center. However, prison officials have no obligation to accommodate such inmate preferences. Rather, placement of state prisoners is a matter left to the discretion of state officials, and a prisoner has no constitutional right springing from the Constitution itself or from any protected liberty or property interest arising from state law to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. *Olim v. Wakinekona,* 461 U.S. 238, 245–46 (1983); *Montanye v. Haymes,* 427 U.S. 236, 242 (1976); *Meachum v. Fano,* 427 U.S. 215, 224–25 (1976); *Tighe v. Wall,* 100 F.3d 41, 42 (5th Cir.1996); *Biliski v. Harborth,* 55 F.3d 160, 162 (5th Cir.1995); *Jackson v. Cain,* 864 F.2d 1235, 1250 (5th Cir.1989); *Maddox v. Thomas,* 671 F.2d 949, 950 (5th Cir.1982); *Davis v. St. Charles Parish Correctional Center,* Civ. Action No. 10–98, 2010 WL 890980, at *3 (E.D.La. Mar. 8, 2010); *Oatis v. St. Tammany Parish Sheriff's Office,* Civ. Action No. 09–6266, 2009 WL 3566120, at *3 (E.D.La. Oct. 29, 2009); *George v. Travis,* Civ. Action No. 07–986, 2007 WL 1428744, at *8 n. 12 (E.D.La. May 10, 2007).

**\*6** Second, the Court notes that plaintiff seems to believe that prison officials have a constitutional duty to guarantee his absolute safety. They most assuredly have no such obligation. On the contrary, the Eighth Amendment mandates only "reasonable" safety in prisons. *Verrette v. Randolph,* Civ. Action No. 08–1200, 2009 WL 103715, at *4 (E.D.La. Oct. 22, 2008) (Shushan, M.J.) (adopted by Feldman, J., on Jan. 13, 2009); *Wolters v. Federal Bureau of Prisons,* No. 08–CV–0837, 2008 WL 4558346, at *2 (W.D.La. Sept. 19, 2008) (Kirk, M.J.) (adopted by Drell, J., on October 9, 2008), *vacated in part on other grounds,* 352 Fed. App'x 926 (5th Cir.2009). Further, to require "absolute" safety would ask the impossible of prison administrators:

> [I]t is doubtful that inmate against inmate violence can ever be prevented within a prison setting no matter how carefully a prison

might be operated. Courts must comprehend the magnitude of the prison administrators' problem and recognize the distinctly unique situation caused by confining human beings in a tension-filled atmosphere. Inmate assaults upon inmates are not unusual in the best run prisons.

*Campbell v. Anderson,* 335 F.Supp. 483, 486 (D.Del.1971); *see also Farmer,* 511 U.S. at 858–89 (Thomas, J., concurring) (noting that "[p]risons are necessarily-dangerous places" which "house society's most antisocial and violent people in close proximity with one another" and that "some level of brutality ... among prisoners is inevitable no matter what the guards do unless all prisoners are locked in their cells 24 hours a day and sedated") (quotation marks, brackets, and ellipsis omitted). Indeed,

> [t]his is often the predicament confronting prison officials who must serve as referees, as well as custodians, over incarcerated individuals who are not known for their civility or their ability to negotiate amicably or reasonably with other individuals. Every day prison officials must make decisions as to whether a dispute between two prisoners is a genuine threat to their safety or merely a routine dispute that will soon be forgotten. Sometimes, an official makes an incorrect assessment regarding the seriousness of the situation and someone gets hurt; however, the official is entitled to qualified immunity and cannot be held liable if he made a good faith error.

*McKnight v. Livingston,* Civ. Action No. H–06–3674, 2007 WL 221926, at *2 (S.D.Tex. Jan. 25, 2007) (citations omitted).

*IV. Medical Claim*

Plaintiff's next claim is that he was denied adequate medical care by Dr. LaRavia. [26] Specifically, plaintiff recounts two unsatisfactory visits with Dr. LaRavia.

The first of those visits took place on November 18, 2009. According to the medical records concerning that visit, plaintiff complained of numerous ailments, including pain when urinating, a toenail fungus, a knot on his head, a lump on his left arm, dry skin, pain in his chest, warts on his penis, and nasal congestion. It was also noted that he had a history of seizures and ulcerative colitis. He additionally requested that he be given Ensure, a nutritional supplement. He was examined and his complaints were assessed. Thereafter, Dr. LaRavia issued various orders to address plaintiff's concerns. Specifically, Dr. LaRavia ordered that plaintiff be given the following treatments: (1) one can of Ensure twice per day for one year; (2) Asacol three times per day for one year; [27] (3) application of moist heat to his chest three times per day for five days; (4) freezing of the warts; (5) minor surgery for the toenail complaints; (6) nasal salve twice per day for six months; (7) Nasacort nasal spray daily for six months; (8) Nizoral shampoo weekly for three months; and (9) lubricating lotion twice per day for six months.

**\*7** The second visit took place on January 13, 2010. Plaintiff states that, during that visit, Dr. LaRavia decided not to perform the toenail surgery after concluding that it would not correct the problem. The medical records from that visit also reflect that Dr. LaRavia considered and addressed plaintiff's numerous other complaints and adjusted his treatment plan. Specifically, Dr. LaRavia ordered: (1) the scheduling of blood work; (2) an increase in the Asacol to four times per day for three months; (3) Amitriptyline nightly for three months; [28] (4) the scheduling of liver function tests; (5) Cetaphil lotion twice a day for six months; (6) Triamcinolone twice per day for three months; [29] (7) increased water intake; (8) the scheduling of surgery to remove the mass on plaintiff's arm; [30] (9) one can of Ensure twice per day for six months; and (10) daily walking.

It is clear that a prisoner's constitutional rights may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. *Harris v. Hegmann,* 198 F.3d 153, 159 (5th Cir.1999). However, even if the Court assumes for the purposes of this decision that plaintiff's medical needs were sufficiently

serious to trigger constitutional protections, it is evident that Dr. LaRavia was not deliberately indifferent to those needs.

The United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

*Domino v. Texas Department of Criminal Justice,* 239 F.3d 752, 756 (5th Cir.2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir.1997); *see also Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

The medical records in the instant case clearly show that Dr. LaRavia did not ignore plaintiff's numerous medical complaints; on the contrary, Dr. LaRavia ordered medical tests, performed minor surgery, and prescribed various medications to address plaintiff's array of ailments. Those medical records disprove any allegation that he was deliberately indifferent to plaintiff's medical needs. *See Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir.1995) ( "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). The fact that plaintiff allegedly continued to experience pain despite treatment is insufficient to state a constitutional claim. *Williams v.*

*Chief of Medical Operations, Tarrant County Jail,* No. 94–
10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994);
*see also Spruill v. Gillis,* 328 Fed. App'x 797, 801 (3rd
Cir.2009).

**\*8** It is evident that plaintiff was dissatisfied and
disagreed with his medical treatment, especially the
decision not to send him to outside specialists or to take x-
rays or other types of medical scans. However, that does
not make his claims actionable. As the United States Fifth
Circuit Court of Appeals has held: "Unsuccessful medical
treatment, acts of negligence, or medical malpractice
do not constitute deliberate indifference, nor does a
prisoner's disagreement with his medical treatment, absent
exceptional circumstances. Furthermore, the decision
whether to provide additional treatment is a classic
example of a matter for medical judgment." *Gobert v.
Caldwell,* 463 F.3d 339, 346 (5th Cir.2006) (footnote
and quotation marks omitted). Dr. LaRavia's decisions in this
case were clearly based on his professional judgment, and,
as such, are not lightly second-guessed in a federal civil
rights action. *See Estelle v. Gamble,* 429 U.S. 97, 107
(1976) ("[T]he question of whether an X-ray or additional
diagnostic techniques or forms of treatment is indicated
is a classic example of a matter for medical judgment.").
The same is true regarding his decision that plaintiff
should be treated in the jail medical department rather
than by outside medical providers. *See Alfred v. Texas
Department of Criminal Justice,* 80 Fed. App'x 926, 927–
28 (5th Cir.2003); *see also Fowler v. Hodge,* 94 Fed. App'x
710, 713 (10th Cir.2004).

Simply put, the determinative issue is not whether plaintiff
was satisfied with his care but instead whether Dr.
LaRavia acted with deliberate indifference. It is clear that
there was no deliberate indifference in this case, and the
claim against Dr. LaRavia should therefore be dismissed.

### V. Excessive Force Claims

Lastly, in his amended complaint, plaintiff claims
that excessive force was used against him by Officer
David Alford and/or Lieutenant Ronnie Seal on two
occasions. [31] Without question, it is unconstitutional
for a prison guard to use excessive force against an
inmate. However, the United States Supreme Court has
explained: "[W]henever prison officials stand accused
of using excessive physical force in violation of the

Cruel and Unusual Punishments Clause, the core judicial
inquiry is ... whether force was applied in a good-faith
effort to maintain or restore discipline, or maliciously
and sadistically to cause harm." *Hudson v. McMillian,*
503 U.S. 1, 6 (1992) (quotation marks omitted). Only
in the latter instance will the force be considered
unconstitutionally excessive.

Concerning the first occasion, plaintiff contends that he
was handcuffed too tightly by Alford on March 3, 2010. It
is alleged that Alford came to plaintiff's cell to escort him
outdoors for exercise. Plaintiff states:

> Plaintiff stretched his wrist through
> the tray slot to be cuffed. Sgt.
> Alford puts the cuffs on plaintiffs
> wrist and closed them to tight. The
> cuffs wedged into plaintiffs flesh
> cutting his circulation off. Plaintiff
> immediately informed Sgt. Alford
> that the cuffs are way to tight and to
> please loosen the cuffs because they
> are hurting me. [32]

**\*9** When plaintiff complained, Alford immediately
removed the cuffs and told plaintiff he would not be taken
outside.

Those allegations fail to state an excessive force claim.
There is simply no evidence that Alford intentionally
placed the handcuffs on too tight, and he immediately
removed them when plaintiff complained. Moreover, even
if it could be shown that Alford was intentionally rough
with plaintiff, his claim still would not be actionable. As
the United States Supreme Court recently reiterated:

> [N]ot every malevolent touch
> by a prison guard gives
> rise to a federal cause of
> action. The Eighth Amendment's
> prohibition of "cruel and unusual"
> punishments necessarily excludes
> from constitutional recognition *de
> minimis* uses of physical force,
> provided that the use of force is not
> of a sort repugnant to the conscience
> of mankind.

*Wilkins v. Gaddy,* 130 S.Ct. 1175, 1178 (2010) (citation and
quotation marks omitted). The facts recounted by plaintiff

regarding this incident, even if true, simply do not indicate an unconstitutional use of force.

The second occasion occurred the following day. In that incident, plaintiff was engaged in a verbal confrontation with another inmate while exercising outside. Due to that altercation, plaintiff was escorted back to his cell by Alford and Seal. Plaintiff alleges that, during the escort, the officers squeezed his arm so hard that a surgical incision burst open, forced him to walk so fast that his shackles were slamming into his shins and Achilles tendons, and repeatedly yanked his handcuffs so as to cut his wrists and cause his face and body to slam into his cell bars. Those allegations are sufficient to state an excessive force claim, and the Court cannot say that the claim is frivolous. Accordingly, at least at this point, the claims arising from the March 4 incident should be allowed to proceed.

### *RECOMMENDATION*

It is therefore **RECOMMENDED** that plaintiff's official-capacity claims be **DISMISSED WITH PREJUDICE.**

It is **FURTHER RECOMMENDED** that all of plaintiff's individual-capacity claims be **DISMISSED WITH PREJUDICE,** except for the individual-capacity claims against David Alford and Ronnie Seal concerning the use of excessive force on March 4, 2010.

It is **FURTHER RECOMMENDED** that the individual-capacity claims against David Alford and Ronnie Seal concerning the use of excessive force on March 4, 2010, be allowed to proceed pending further review.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir.1996) (en banc). [33]

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3199854

### Footnotes

1    Rec. Doc. 2.
2    Rec. Doc. 16.
3    Rec. Doc. 7.
4    Rec. Doc. 6.
5    Rec. Docs. 12 and 27.
6    The court must liberally construe a *pro se* civil rights complaint. *See Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir.1994).
7    A state official or employee sued in his official capacity is considered a "person" with respect to a § 1983 claim for relief which is declaratory or injunctive in nature and prospective in effect. *Stotter,* 508 F.3d at 821; *American Civil Liberties Union,* 523 F.Supp.2d at 479. Further, the Eleventh Amendment does not bar such a claim. *Aguilar v. Texas Department of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir.1998).
8    Rec. Doc. 12, pp. 1–2.
9    Rec. Doc. 12, pp. 3–4.
10   Rec. Doc. 12, p. 4.
11   Rec. Doc. 12, pp. 4–5.
12   Rec. Doc. 12, p. 5.
13   Rec. Doc. 12, p. 6.
14   Rec. Doc. 12, pp. 6–7.
15   Rec. Doc. 12, pp. 7–8.
16   Rec. Doc. 12, p. 9.

17    The Court notes that plaintiff alleges in the complaint that he also put other individuals on notice regarding the purported dangers. However, only LeBlanc and Tanner have been named as defendants with respect to these claims, and, therefore, the Court need consider only what they knew. Although LeBlanc and Tanner are supervisory officials, they cannot be held liable pursuant to 42 U.S .C. § 1983 under any theory of vicarious liability for the acts or failures of their subordinates. *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir.1987); *see also Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir.2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

18    Rec. Doc. 12, pp. 15–19; Rec. Doc. 12–1, pp. 58–60.

19    Rec. Doc. 12, pp. 11–12.

20    A copy of plaintiff's notice, which warns only of dangers posed by Ali Barconey and Kumoul Jackson, has been filed into this federal record. Moreover, in his response to that notice, Tanner notified plaintiff that he should follow the prison's security procedures if he believed he was in danger:

> You note in your letter that you are notifying me of your situation and that if you are "hurt again" it will "fall on" me. Although you allege in your letter that Inmate "Kamoul" has thrown "stuff" on you, has spit on you, and has generally been harassing you, you declined an opportunity today to file a formal request for protection offered by Major Leroy Graves. Now let me put you on notice that you are responsible for following our rules and procedures regarding protection. If you do not understand them, I suggest you speak to a security supervisor and request his/her assistance. Under no circumstances are you permitted to take matters into your own hands. In addition, attempts at coercing me or my staff to take a particular course of action will not be permitted and may result in your receiving disciplinary action.

    Rec. Doc. 12–1, p. 19, Letter from Tanner to plaintiff dated May 28, 2008.

21    Rec. Doc. 12, pp. 12–13.

22    *See* Rec. Doc. 2, p. 22.

23    Rec. Doc. 12, p. 13.

24    Rec. Doc. 12, p. 14.

25    *See* Rec. Doc. 2, p. 24.

26    In the complaint, plaintiff mentions other individuals when recounting his attempts to secure medical care. However, he has named only Dr. LaRavia as a defendant with respect to this claim. Accordingly, the Court need consider only the allegations against that defendant.

27    Asacol is used to treat ulcerative colitis.

28    Amitryptyline is an antidepressant.

29    Triamcinolone is a steroid used to skin conditions and other ailments.

30    The medical records reflect that this surgery was subsequently performed on February 10, 2010.

31    Although it is not entirely clear from plaintiff's amended complaint, it appears that he may also mean to assert a failure-to-protect claim against Seal. However, if that is plaintiff's intent, the claim is frivolous. Plaintiff identifies only one incident which occurred after Seal was notified of the need for protection, and that incident involved nothing more than inmate David Nelson spitting on plaintiff. As previously noted, the failure to protect plaintiff from such an incident did not expose him to a substantial risk of serious harm.

32    Rec. Doc. 16, p. 5.

33    *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

2008 WL 2641268
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Alexandria Division.

William Michael YORK, Plaintiff,
v.
P. JACKSON, et al., Defendants.

No. 1:08cv547 (JCC/TRJ).
|
July 2, 2008.

**Attorneys and Law Firms**

William Michael York, Waverly, VA, pro se.

*MEMORANDUM OPINION*

JAMES C. CACHERIS, District Judge.

**\*1** William Michael York, a Virginia inmate proceeding
*pro se,* has filed a civil rights action, pursuant to 42
U.S.C. § 1983, against P. Jackson and W. Smith, two
correctional officers at Sussex II State Prison ("Sussex")
in Waverly, Virginia, alleging that these officers violated
plaintiff's constitutional rights when they "permitted
[another inmate] to assault [his] person." Plaintiff also
submitted an application to proceed *in forma pauperis.*
After reviewing plaintiff's complaint, the claim against
defendants must be dismissed pursuant to 28 U.S.C. §
1915A(b)(1) for failure to state a claim. [1]

### I. Background

In February of 2008, plaintiff was incarcerated at Sussex
in Waverly, Virginia. Liberally construed, plaintiff raises
the following claims in his complaint: (1) failure to protect;
(2) failure to provide medical care; and (3) denial of access
to his institution's grievance process.

According to the complaint, on February 27, 2008,
"inside the 3-B segregation unit at Sussex II State Prison,
correctional officer Jackson and Correctional Officer
Smith permitted inmate G. Walton to assault [plaintiff's]
person." Summary 1. The alleged "assault" plaintiff
complains of occurred when the two defendants were

escorting inmate Walton back into the unit with "his
hands cuffed behind his back" and plaintiff was inside a
shower waiting to be escorted back to his cell. *Id.* Plaintiff
claims that inmate Walton, while under the control of
defendant Jackson, "was permitted to walk 25 to 30
feet across the floor in order to arrive at the shower
area." *Id.* Upon arrival at the shower area, plaintiff claims
that inmate Walton "spit on [plaintiff's] face, shoulder,
and neck." *Id.* Plaintiff claims that both defendants
Jackson and Smith could have prevented inmate Walton
from approaching the shower area but failed to do so.
Further, plaintiff states that "[b]y permitting this assault
to occur, correctional officer Jackson and correctional
officer Smith not only showed disregaurd [sic] for DOC
policy and procedure, they showed a total disregaurd [sic]
for [plaintiff's] safety and well being." *Id.* at 2.

Following the incident with inmate Walton, plaintiff
claims that he informed defendant Jackson that he
"wanted to be taken to the medical department for
evaluation and possible treatment by receiving a tetanus
shot. Also to have my right eye flushed out because of the
saleva [sic] that went into the eye." *Id.* Plaintiff claims that
defendant Jackson directed him to take another shower to
wash the saliva off and informed plaintiff that he would
contact the medical department. Plaintiff was not taken to
the medical department on that day and claims that "once
again my physical well being was disregaurded [sic]." *Id.*

Finally, in the complaint and attachments, plaintiff
outlines the various efforts he made to grieve various
aspects of the incident with inmate Walton. Plaintiff filed
two emergency grievances on February 27, 2008 asking
to be taken to the medical department for evaluation
and for a tetanus shot. *Id.* at 3. Plaintiff claims that he
never received a response to these emergency grievances
although he has receipts documenting that the grievances
were filed. Plaintiff also filed a number of grievances to
obtain the name of the inmate who allegedly "assaulted"
him as well as the name of the two officers who were
present for the incident. *Id.* at 4. After "rewrit[ing]
several letters and complaints," plaintiff obtained the
requested information. Also, plaintiff filed a number of
informal complaints and grievances complaining about
how defendants Jackson and Smith handled the incident
as well as the failure of the institution to formally
discipline inmate Walton for the alleged "assault."
Plaintiff seeks $70,000.00 in money damages. *Id.* at 5.

## II. Standard of Review

**\*2** In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined under "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker,* 9 F.Supp.2d 641, 642 (E.D.Va.1998). In considering a motion to dismiss, the court presumes that all factual allegations in the complaint are true and accords all reasonable inferences to the nonmoving party. 2A *Moore's Federal Practice* ¶ 12.07[2.5] (2d ed.1994); *see Mylan Labs, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face," rather than one that is merely "conceivable." *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1965, 1974 (2007). Courts may also consider exhibits attached to the complaint. *United States ex rel. Constructors, Inc. v. Gulf Ins. Co.,* 313 F.Supp.2d 593, 596 (E.D.Va.2004) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 at 299 (2d ed.1990), *cited with approval in Anheuser-Busch v. Schmoke,* 63 F.3d 1305, 1312 (4th Cir.1995)). Moreover, where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." *Gulf Ins. Co.,* 313 F.Supp.2d. at 596 (citing *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir.1991)).

## III. Merits

### A. *Failure to Protect*

It is well-settled that the Eighth Amendment obligates prison officials to take reasonable precautions to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (internal quotations and citations omitted). Exposing prisoners to harm from other prisoners is not just or legitimate punishment; rather, it is cruel and unusual punishment, for "gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency." *Id.* (internal quotation marks

and citations omitted). In other words, a prisoner has a "constitutional right 'to be reasonably protected from the constant threat of violence and sexual assault from his fellow inmates....' " *Withers v. Levine,* 615 F.2d 158, 161 (4th Cir.1980) (quoting *Woodhous v. Virginia,* 487 F.2d 889 (4th Cir.1973)). Thus, prison officials must "take reasonable measures to guarantee the safety of other inmates." *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984); *see also Winfield v. Bass,* 106 F.3d 525 (4th Cir.1997). A prisoner alleging that prison officials have failed to protect the prisoner from another inmate must show (i) that the prisoner was incarcerated under conditions posing a substantial risk of serious harm and (ii) that the defendants were deliberately indifferent to those conditions. *Farmer,* 511 U.S. at 834.

**\*3** Here, plaintiff is unable to meet either prong of the *Farmer* test. Plaintiff has not alleged facts sufficient to show that he is incarcerated under conditions posing a substantial risk of serious harm based on this one incident where one inmate spit on him. While in the segregation unit and waiting to be transported from the shower back to his cell, plaintiff acknowledges that he was "locked inside the # 3 shower." Additionally, plaintiff acknowledges that the inmate who spit on him "had his hands cuffed behind his back" and was being escorted back into the segregation unit by a corrections officer. Plaintiff's own recitation of events demonstrates that both he and the other inmate were secure throughout the entire incident and unable to have any physical contact with one another. Plaintiff has alleged only that another inmate spit on him, but being spat upon does not amount to cruel and unusual punishment. *See DeMallory v. Cullin,* 855 F.2d 442, 444 (7th Cir.1988); *Carson v. Birkett,* No. 05cv72679, 2005 WL 1981294, at \*1 (E.D.Mich. Aug. 16, 2005). Additionally, the instant facts alleged fail to suggest that this one spitting incident placed plaintiff at risk of serious harm. Moreover, plaintiff does not claim that the inmate remained a threat to him after the spitting incident, nor is there any suggestion that the inmate was a threat prior to its happening.

Under the second prong, plaintiff has not alleged facts sufficient to suggest that either defendant was deliberately indifferent. Plaintiff has not offered facts to suggest that either defendant knew that this particular inmate may lash out at plaintiff or knew that plaintiff had any history of troubled interactions with this inmate. Further, although plaintiff asserts that the defendants

violated prison policy by allowing the other inmate to walk past the showers, plaintiff fails to demonstrate how defendants' actions put him in harms way or how their actions showed indifference to plaintiff's health, safety, or well-being. Plaintiff notes that defendant Jackson had control of the other inmate and that defendant Smith "could have also made some type of effort to stop this inmate from approaching the shower area, but he did not." However, defendants' failure to prevent this incident, of which they had no prior warning or knowledge, does not constitute deliberate indifference. Moreover, mere negligence by prison officials does not amount to a violation of an inmate's Eighth Amendment right to be protected from the attacks of fellow inmates. *Ruefly v. Landon,* 825 F.2d 792 (4th Cir.1987) ("Mere negligent conduct on the part of prison officials who fail to protect a prisoner from a risk of harm posed by fellow inmates does not constitute a violation of the [E]ighth [A]mendment's prohibition against cruel and unusual punishment."). Because plaintiff fails to allege facts sufficient to demonstrate that defendants failed to protect him from his fellow inmate, this claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

### B. *Failure to Provide Medical Care*

**\*4** Prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if such care is inadequate. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). However, to establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 105; *see also Staples v. Va. Dep't of Corr.,* 904 F.Supp. 487, 492 (E.D.Va.1995). Under this standard, a prisoner must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. *See, e.g., Cooper v. Dyke,* 814 F.2d 941, 945 (4th Cir.1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); *Loe v. Armistead,* 582 F.2d 1291 (4th Cir.1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that serious medical need.

For this second prong, an assertion of mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. *Estelle,* 429 U.S. at 106; *Daniels v.*

*Williams,* 474 U.S. 327, 328 (1986); *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir.1990). A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir.1985); *Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir.1975) (per curiam); *Harris v. Murray,* 761 F.Supp. 409, 414 (E.D.Va.1990). Further, "[a] complaint that a physician has been negligent in diagnosing ... a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier,* 896 F.2d at 851. However, the prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (citations omitted).

Plaintiff fails to state an actionable Eighth Amendment claim for inadequate medical care in this case. A prisoner, such as plaintiff, meets his burden to allege a serious medical need by alleging facts sufficient to show that his need has been diagnosed by a physician as mandating treatment and is "so obvious" that even a lay person would easily recognize the need for a doctor's attention or is one where the denial or delay in treatment causes the inmate to suffer a "life-long handicap or loss." *Coppage v. Mann,* 906 F.Supp. 1025, 1037 (E.D.Va.1995). Plaintiff claims that after the incident, he informed defendant Jackson that he "wanted to be taken to the medical department for an evaluation and possible treatment by receiving a tetanus shot." Plaintiff, however, does not allege, nor do the facts in the complaint suggest, that plaintiff was suffering from a serious medical need as a result of the spitting incident. Plaintiff has not alleged that he was in pain or suffered any type of adverse reaction and nothing in the complaint suggests that plaintiff suffered any physical injury. Moreover, although he claims that he was not taken to the medical department on the date of the incident, there is no suggestion that any delay aggravated any injuries. As plaintiff has failed to present facts sufficient to demonstrate a serious medical need or that defendants were deliberately indifferent to such a need, this claim will also be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

### C. *Denial of Access to the Institution's Grievance Process*

 **\*5** Plaintiff's final complaint is that he filed a number of emergency grievances following this alleged incident to which prison officials failed to respond and that prison officials interfered with his ability to file informal complaints and grievances regarding this incident. However, the Constitution "creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994); *Mitchell v. Murray,* 856 F.Supp. 289, 294 (E.D.Va.1994). Because a state's grievance procedure confers no substantive rights upon prison inmates, a prison official's failure to comply with the grievance procedures is not actionable under § 1983. *See Adams,* 40 F.3d at 75; *Mitchell,* 856 F.Supp. at 294. Therefore, even if prison officials failed to respond to plaintiff's emergency grievances or interfered with his ability to file grievances, such an allegation does not state a claim under § 1983. Accordingly, plaintiff has failed to state a § 1983 claim and this claim must also be dismissed. 28 U.S.C. § 1915A(b)(1).

An appropriate Order shall issue.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 2641268

Footnotes

1       Section 1915A provides:

        **(a) Screening.**-The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

        **(b) Grounds for dismissal.**-On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

        (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or

        (2) seeks monetary relief from a defendant who is immune from such relief.

**End of Document**                                        © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 1981294
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan, Southern Division.

Antonio F. CARSON, Plaintiff,

v.

Thomas M. BIRKETT, Barbara Meaghen,
R. Erickson, and R. Wilson, Defendants.

No. 05-CV-72679-DT.
|
Aug. 16, 2005.

**Attorneys and Law Firms**

Antonio Carson, Standish, MI, pro se.

*ORDER OF DISMISSAL*

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan on August 16, 2005.

I. Introduction

DUGGAN, J.

**\*1** Plaintiff Antonio F. Carson is a state prisoner at Alger
Maximum Correctional Facility in Munising, Michigan.
He has been granted leave to proceed without prepayment
of the filing fee and costs for this civil rights action.
Currently pending before the Court is Plaintiff's *pro se* civil
rights Complaint under 42 U.S.C. § 1983.

The named Defendants are employed by the Michigan
Department of Corrections at Standish Maximum
Correctional Facility in Standish, Michigan where this
cause of action arose. Defendant Thomas M. Birkett
is the warden; Barbara Meaghen is a deputy warden;
R. Erickson is a resident unit officer; and R. Wilson is
a correctional officer. Plaintiff sues Defendants in their
individual capacities for monetary and declaratory relief.

The Complaint alleges that Defendants violated Plaintiff's
rights under the Eighth Amendment to the United States
Constitution by failing to protect him from an assault

and battery by another prisoner. Specifically, on October
6, 2004, a prisoner with Aquired Immune Deficiency
Syndrom ("AIDS") allegedly spit on Plaintiff's face, neck,
chest, and stomach while the two inmates were confined
in yard modules. Correctional officials told Plaintiff to
shower after the incident and took him to a hospital where
he spoke with a physician, but was not treated or tested.

Plaintiff claims that he has experienced extreme emotional
distress as a result of being spat upon by an AIDS-
infected prisoner. Count I of the Complaint alleges that
Defendants were deliberately indifferent to Plaintiff's right
not to be subject to cruel and unusual punishment.
Count II alleges that Defendants subjected Plaintiff to an
unnecessary assault and battery

II. Discussion

When screening an indigent prisoner's civil rights
complaint against a governmental entity, officer, or
employee, federal district courts must determine whether
the complaint, or any portion of it, (1) is frivolous,
malicious, or fails to state a claim for which relief may be
granted, or (2) seeks monetary relief from a defendant who
is immune from such relief. *Smith v. Campbell,* 250 F.3d
1032, 1036 (6th Cir.2001) (citing 28 U.S.C. §§ 1915(e)(2)
and 1915A). A complaint is frivolous if it lacks an arguable
basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319,
325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).

To successfully establish a *prima facie* case under § 1983,
Plaintiff must prove that Defendants: (1) acted under
color of state law; and (2) deprived Plaintiff of rights
secured by federal law. *See Bloch v. Ribar,* 156 F.3d 673,
677 (6th Cir.1998) (citing *Parratt v. Taylor,* 451 U.S. 527,
535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981)). In
this case, Defendants were acting under color of state law
when performing their official duties for the Department
of Corrections. At issue, however, is whether Defendants
deprived Plaintiff of any right secured by federal law.

The facts as alleged fail to show that Defendants deprived
Plaintiff of a federal right. "In order to establish liability
under the Eighth Amendment for a prison official's failure
to protect [him], an inmate must demonstrate that the
official was deliberately indifferent 'to a substantial risk
of serious harm' to the inmate." ' *Greene v. Bowles,* 361
F.3d 290, 294 (6th Cir.2004) (quoting *Farmer v. Brennan,*

511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994)). Intentionally spitting on another person is a battery, *United States v. Taliaferro,* 211 F.3d 412, 415 (7th Cir.2000), and the assailant was allegedly infected with AIDS. Nevertheless, Plaintiff's physician informed Plaintiff that he would not become infected with the disease as a result of the spitting incident. The only injury alleged is extreme emotional distress, which is not a basis for a federal civil rights action. 42 U.S.C. § 1997e(e). Furthermore, being spat upon does not amount to cruel and unusual punishment in violation of the Eighth Amendment. *DeMallory v. Cullen,* 855 F.2d 442, 444 (7th Cir.1988) (agreeing with the district court's finding that "a correctional officer spitting upon a prisoner does not rise to the level of a constitutional violation").

### III. Conclusion

**\*2** Defendants were not deliberately indifferent "to a substantial risk of serious harm." Thus, Plaintiff's allegations lack an arguable basis under law and are frivolous.

Accordingly,

IT IS ORDERED that Plaintiff's Complaint is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(b).

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1981294

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.