UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**CHAMMA K. BRANDON,**

                Plaintiff,

   -v-                                                                             9:13-cv-00939

**ERIC BLAISE and MARGARET CLANCY,**

                Defendants.
_____

**THOMAS J. McAVOY,**
Senior United States District Judge

### DECISION & ORDER

**I.    INTRODUCTION**

This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. David E. Peebles, Chief United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

In his February 28, 2017 Report and Recommendation, Dkt. No. 159, Magistrate Judge Peebles recommends that defendants Eric Blaise and Margaret Clancy's second motion for summary judgment (Dkt. No. 122) be granted, and that plaintiff's remaining failure to protect claim asserted against these defendants be dismissed. Plaintiff filed objections to the recommendation. Dkt. No. 161.

**II.    STANDARD OF REVIEW**

When objections to a magistrate judge's report and recommendation are lodged, the

district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." See 28 U.S.C. § 636(b)(1); see also United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997) (The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.). "[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." Machicote v. Ercole, 2011 WL 3809920, at * 2 (S.D.N.Y., Aug. 25, 2011)(citations and interior quotation marks omitted); DiPilato v. 7-Eleven, Inc., 662 F. Supp.2d 333, 340 (S.D.N.Y. 2009)(same).

General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error. Farid v. Bouey, 554 F. Supp. 2d 301, 306 n. 2 (N.D.N.Y. 2008); see Frankel v. N.Y.C., 2009 WL 465645 at *2 (S.D.N.Y. Feb. 25, 2009). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

### III. DISCUSSION

The Court has considered plaintiff's objections and completed a *de novo* review of the those portions of Magistrate Judge Peebles's Report and Recommendation to which specific objections are made.

As explained by Magistrate Judge Peebles, plaintiff's claim arises from a situation

2

that occurred at the Clinton County Jail ("CCJ") on November 18, 2012. In this regard, Magistrate Judge Peebles stated what he found to be the relevant material facts as follows:

> While at the CCJ, plaintiff was housed in cell OBSV2-2 from November 10, 2012, until November 19, 2012. Dkt. No. 122-3 at 3; Dkt. No. 122-9 at 2. That placement resulted from plaintiff's involvement in a fight with another inmate. Dkt. No. 122-9 at 2; see also Dkt. No. 122-2 at 1-12. The OBSV2 unit at the CCJ consists of three cells separated by concrete walls to prevent physical interaction between inmates housed in the units. Dkt. No. 122-9 at 2-3; see also Dkt. No. 122-5 at 2-3.
>
> Fellow inmate Terrance Somma, who plaintiff refers to in his amended complaint as "Tiny" and who he characterizes as "hostile and mentally deranged," Dkt. No. 17 at 31, was transferred into cell OBSV2-1, which is next to the cell in which plaintiff was housed, on November 17, 2012, also due to his involvement in a fight with a fellow inmate. Dkt. No. 122-9 at 2; see also Dkt. No. 122-4 at 2-8. The decision to transfer inmate Somma into the cell adjacent to plaintiff's was made by defendant Clancy, a corrections sergeant, in her discretion. Dkt. No. 122-9 at 3; see also Dkt. No. 122-8 at 2.
>
> On November 18, 2012, defendant Blaise, a corrections officer, instructed plaintiff to exit his cell and collect all of the food trays from the unit, and promised that, in return, plaintiff would be allowed to remain out of his cell for an extra fifteen minutes. Dkt. No. 17 at 31. Plaintiff responded by informing defendant Blaise that he had been verbally assaulted by inmate Somma the night before and stating that he "would rather not pick up [his] tray." Id. Plaintiff alleges that defendant Blaise then said to him, "[D]on't worry about him, he's a punk. Besides, from what I heard, I'm sure if I let him out, you'd kick his ass." Id.
>
> As plaintiff was in the course of picking up trays, defendant Blaise witnessed inmate Somma spitting on plaintiff. Dkt. No. 17 at 31; Dkt. 122-7 at 2. At no point during the encounter did inmate Somma physically touch plaintiff. Dkt. No. 122-7 at 3. Following the incident, defendant Clancy spoke with inmate Somma concerning the matter and warned him that further disruptive behavior would result in discipline. Dkt. No. 122-8 at 3.

Rep. Rec. pp. 2-4.

After recommending denial of defendants' motion on the grounds of failure to

3

exhaust administrative remedies[1] and failure to allege that plaintiff suffered a serious injury from the altercation,[2] Magistrate Judge Peebles concluded that "[b]ased on the totality of the record evidence, . . . no reasonable factfinder could conclude that defendants should have been aware that plaintiff was at risk of becoming involved in a violent altercation with inmate Somma through the cell-bar barrier during the brief moment that plaintiff passed inmate Somma's cell." Rep. Rec. pp. 12-13.   Magistrate Judge Peebles also noted that "courts have routinely concluded that inmates' health and safety is not placed at substantial risk by the potential of another inmate spitting on them." Id.  pp. 14 -15 (collecting cases). Ultimately,  Magistrate Judge Peebles concluded that "even assuming that defendants Blaise and Clancy were aware that inmate Somma had verbally harassed plaintiff the night before the incident and defendants Blaise and Clancy knew that both inmates had been placed in the OBSV2 unit as a result of violent encounters with other inmates, no reasonable factfinder could conclude that they should have been aware that plaintiff was at risk of serious harm when defendant Blaise asked him to collect the food trays while inmate Somma remained locked in his  cell, when they knew of no history of violence between plaintiff and inmate Somma." Id. p. 15.

Plaintiff argues that Magistrate Judge Peebles erred because he failed to include the following facts in his analysis which, plaintiff contends, when viewed in the light most

---

[1] Because defendants failed to provide any evidence establishing the procedures available to CCJ inmates in order to lodge complaints regarding prison conditions, and because plaintiff provided a sworn statement that he filed a grievance concerning the failure of defendant Blaise and Clancy to protect him from an altercation with inmate Somma, Magistrate Judge Peebles found a question of fact existed preventing summary judgment on this ground.

[2] In this regard, Magistrate Judge Peebles noted that suffering a "serious injury is unequivocally not a necessary element of an Eighth Amendment claim." Willey v. Kirkpatrick, 801 F.3d 51, 68 (2d Cir. 2015). Rep. Rec. p. 12.

favorable to plaintiff and in the context of the facts articulated by Magistrate Judge Peebles, raise a question of material fact as to whether defendants' failure to protect plaintiff was done with a sufficiently culpable state of mind. These facts are: (1) Prior to November 18, 2012, Clancy purportedly told plaintiff that if he continued to file grievances about the contents of his meals, she would "lock his ass up." Plaintiff argues that this statement displays "a clear animus towards Plaintiff for exercising his protected right to grieve." Pl. Mem. L., p. 10; (2) Clancy purportedly stated as she escorted Somma into the OBSV2 unit: "Let's see if he tries that shit on Brandon." Plaintiff argues that this statement incited Somma to attack plaintiff. Id.; (3) After plaintiff asked Blaise for a grievance to report that Somma spat on him, Blaise purportedly stated: "Give me a break Brandon, you know you had that coming." Id. Plaintiff argues that this fact, combined with the other facts, leads to an inference that "the defendants potentially plotted and planned plaintiff's attack." Id. p 11; and, (4) Michael Smith, the CCJ Jail Administrator, stated in an affidavit that "[t]he cells located in OBSV2 are the most segregated and impose the most restrictions upon inmates incarcerated at the CCJ. Inmates are placed in these cells for either administrative or disciplinary reasons. Thus inmates who pose the greatest security and safety risks are placed in housing units such as OBSV2." From this, plaintiff argues that the evidence supports the conclusion that Somma "posed the greatest security and health risk in Clinton County Jail with a reputation for violently attacking other detainees." Id. 10-11. The Court does not find these facts, either in isolation or in the context of all the facts alleged in this case, alter Magistrate Judge Peebles's analysis or his ultimate recommendation.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates" in their custody. Farmer v. Brennan, 511

5

U.S. 825, 832 (1994)(citing Hudson v. Palmer, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). That duty extends an obligation upon prison officials to protect inmates from harm inflicted by fellow inmates. Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985). Thus, "[a]llowing an attack on an inmate to proceed without intervening is a constitutional violation in certain circumstances." Rosen v. City of New York, 667 F. Supp. 2d 355, 359 (S.D.N.Y. 2009)(internal quotation marks and citation omitted).

An inmate asserting a failure to protect claim under the Eighth Amendment must establish both that the deprivation alleged is sufficiently serious—imposing a substantial risk of serious harm, Farmer, 511 U.S. at 834, and that the defendant acted with a "sufficiently culpable state of mind" that amounts to "'deliberate indifference' to the inmate's health and safety." Hope v. Pelzer, 536 U.S. 730, 738 (2002); Wilson v. Seiter, 501 U.S. 294, 298 (1991). Thus, prison officials are liable for failure to protect inmates only when they "know[] of and disregard[] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison "official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot ... be condemned as the infliction of punishment." Id., at 838. This is because "Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety." Id., at 835 (internal quotes omitted). It is important to note that for purposes of analyzing Eighth Amendment claims, "the Supreme Court has drawn a 'distinction between mere negligence and wanton conduct....'" Graham v. Poole, 476 F. Supp.2d 257, 260 (W.D.N.Y. 2007) (citing Whitley v. Albers, 475 U.S. 312, 322 (1986)).

Here, inmate Somma's act of spitting on plaintiff did not expose plaintiff to a substantial risk of serious harm to health and safety. See Rep. Rec. pp. 14-15 (and cases cited thereat). Because Somma was behind bars and had no possibility of physically reaching plaintiff to impose blows, plaintiff's claim fails to establish that defendants Clancy and Blaise were deliberately indifferent to an excessive risk to plaintiff's health and safety. See id.

Moreover, even assuming that the act of one inmate spitting on another inmate creates a risk of serious harm to health and safety, the Court agrees with Magistrate Judge Peebles's conclusion that the facts are insufficient for a reasonable factfinder to conclude that either defendant Clancy or defendant Blaise knew of, yet disregarded, the risk that Somma would spit on plaintiff. As Magistrate Judge Peebles concluded, the facts merely indicated that Somma had verbally harassed plaintiff the night before the incident, and that plaintiff and Somma had both been placed in the OBSV2 unit as a result of violent encounters with other inmates. There is nothing from these facts that would lead to the reasonable inference that defendants Clancy and Blaise knew or should of known that Somma would spit on plaintiff as he was momentarily in front of Somma's cell to pick up a food tray.

Contrary to Plaintiff's argument, the fact that Somma had been placed in the OBSV2 unit does not mean that Somma posed any greater health risk than any other inmate placed in the OBSV2 unit, or that Somma had a known reputation for violently attacking other detainees. The fact that Somma was placed in the OBSV2 unit creates no reasonable inference that the defendants knew, or had reason to know, that Soma would spit on Plaintiff. The fact that defendant Clancy told Plaintiff that she would "lock his ass up" if he

7

continued to file grievances about the contents of his meals provides no probative evidence creating an inference that either defendant knew or had reason to know that Somma would spit on plaintiff. The grievances about the meals and the incident in question are distinct. Similarly, the fact that Clancy commented as she escorted Somma into the unit "Let's see if he tries that shit on Brandon" clearly refers to Somma's physical confrontation with another inmate that landed him in the OBSV2 unit, and creates no reasonable inference that the defendants knew, or had reason to know, that Soma would spit on plaintiff. Likewise, the post-incident statement by defendant Blaise to plaintiff "you know you had that coming" creates no reasonable inference that defendants knew, or had reason to know, that Soma would spit on plaintiff. Plaintiff's contention that defendants "plotted and planned plaintiffs attack" is based upon pure speculation, which is insufficient to create a material question of fact necessary to defeat summary judgment.

Without some indication that Somma had threatened to harm plaintiff (as opposed to harassing him), or that Somma had a history of spitting on other inmates as they passed before his cell, plaintiff's claim is devolved into one requiring prison officers to protect inmates from every eventuality that might occur in the jailhouse, no matter how unexpected, spontaneous, or random. A claim of this nature clearly ignores the Supreme Court's teaching that requires a plaintiff to establish that prison officers acted with deliberate indifference to an inmate's health and safety, meaning that prison officers knew of yet disregarded an excessive risk to the inmates health and safety. See Farmer, 511 U.S. at 837; Hope, 536 U.S. at 738; Wilson, 501 U.S. at 298. As stated above, "Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835 (internal quotes omitted)). Plaintiff's claim provides facts

8

establishing nothing more than that defendants Clancy and Blaise failed to provide ordinary due care for plaintiff's interest in not being spit upon while picking up trays in the OBSV2 unit.

## IV. CONCLUSION

For the reasons discussed above, the Court accepts and adopts Magistrate Judge Peebles's February 28, 2017 Report and Recommendation, Dkt. No. 159. Accordingly, defendants Eric Blaise and Margaret Clancy's second motion for summary judgment (Dkt. No. 122) is GRANTED, and plaintiff's remaining failure to protect claim asserted against these defendants is DISMISSED. The Clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated: March 23, 2017

Thomas J. McAvoy
Senior, U.S. District Judge