**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CHAMMA K. BRANDON,

                                        Plaintiff,                    9:13-cv-00939 (BKS/ATB)

v.

SUZANNE KINTER and KEVIN LAURIN,

                                        Defendants.

---

**Appearances:**

*For Plaintiff:*
William S. Nolan
Gabriella R. Levine
Jennifer M. Thomas
Whiteman Osterman & Hanna LLP
One Commerce Plaza
Albany, New York 12260

*For Defendants:*
April J. Laws
Johnson & Laws, LLC
646 Plank Road, Suite 205
Clifton Park, New York 12065

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

     This 42 U.S.C. § 1983 action arose from Plaintiff Chamma K. Brandon's 2012

incarceration at the Clinton County Jail ("CCJ") where he repeatedly received pork meals despite

his requests for a no-pork, Muslim diet. (*See generally* Dkt. No. 17). Following a bench trial, the

Court found Plaintiff proved that: (1) Defendant Corrections Lieutenant Kevin Laurin's failure to

provide Plaintiff with a no-pork Muslim diet violated the Free Exercise Clause of the First

Amendment; and (2) that Lt. Laurin and Defendant Registered Nurse and Healthcare Coordinator Suzanne Kinter retaliated against Plaintiff for his protected First Amendment speech, i.e., filing food-related grievances, by revoking his medical diet. (*See generally* Dkt. No. 255). The Court awarded Plaintiff $3,000 in compensatory damages on his First Amendment free exercise claim and $7,400 in compensatory damages on his First Amendment retaliation claim and found punitive damages were warranted on both claims. (*Id.* at 58–59). On April 18, 2023, the Court held a video hearing on punitive damages at which Lieutenant Laurin and Nurse Kinter testified. The parties filed letter briefs following the hearing. (Dkt. Nos. 268, 270). After carefully considering the trial record, the credibility of the testimony, and the submissions of the parties, the Court awards Plaintiff $3,000 in punitive damages on his free exercise claim against Lt. Laurin and $7,400 ($3,700 as to each Defendant) in punitive damages on his retaliation claim.

## II.   DISCUSSION

### A.   Applicable Law

An award of punitive damages is reviewed "in accordance with *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996)." *Jennings v. Yurkiw*, 18 F.4th 383, 390 (2d Cir. 2021). A court must consider: "(1) degree of reprehensibility of the defendant's conduct, (2) relationship of the punitive damages to the compensatory damages, and (3) criminal and civil penalties imposed by the state's law for the misconduct in question." *Id.* (quoting *Payne v. Jones*, 711 F.3d 85, 101 (2d Cir. 2013)).

### B.   Analysis

#### 1.   Reprehensibility

"[R]eprehensibility is 'perhaps the most important' consideration in assessing the reasonableness of an award of punitive damages." *Id.* (quoting *Gore*, 517 U.S. at 575). To

evaluate reprehensibility, courts look to "certain 'aggravating factors' that are 'associated with particularly reprehensible conduct' and contribute to the sense that 'some wrongs are more blameworthy than others.'" *Id.* (quoting *Gore*, 517 U.S. at 575–76). Courts should consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *see Jennings*, 18 F.4th at 390 (identifying the "aggravating factors" as including "(1) whether a defendant's conduct was marked by violence or presented a threat of violence, (2) whether a defendant's conduct evinced trickery or deceit as opposed to mere negligence, and (3) whether the record supports a finding of intentional malice" (citing *Gore*, 517 U.S. at 575–76)).

### a.    Lt. Laurin – Free Exercise

The $3,000 punitive damages award is justified by the reprehensibility of Lt. Laurin's actions in violating Plaintiff's First Amendment right to the free exercise of his religion by failing to ensure Plaintiff received a Muslim diet. After learning that Plaintiff had been filing grievances for months requesting a Muslim, no-pork diet, Lt. Laurin went to Plaintiff, admitted it was wrong that Plaintiff was receiving pork meals, and assured Plaintiff he would fix the issue. (Trial Transcript ("T."), at 91). Indeed, fixing the issue would have been a simple task: Lt. Laurin had only to write Plaintiff's name on a one-page "Special Diet Notification" slip, circle "Religious," write "Muslim no pork or pork products," sign his name, and forward the slip to the kitchen. And yet, inexplicably, Lt. Laurin allowed ten days to pass before providing the slip to the kitchen. There is no evidence that this was a "mere accident"—in not notifying the kitchen

sooner, Lt. Laurin acted in reckless disregard of Plaintiff's physical well-being and religious practice, forcing Plaintiff to choose between forgoing approximately six meals during that ten-day period or committing the "high sin" of eating pork. (T. 38–39). Lt. Laurin's conduct is made all the more reprehensible by the fact that Plaintiff, as an inmate, was wholly dependent on CCJ for his meals and thus physically vulnerable.

### b.      Lt. Laurin and Nurse Kinter – Retaliation

In awarding Plaintiff $7,400 in punitive damages on his First Amendment retaliation claim, the Court has considered the particularly reprehensible conduct by Lt. Laurin and Nurse Kinter in revoking Plaintiff's medical diet. To begin, Lt. Laurin's participation in the retaliatory removal of Plaintiff's medical diet was not a one-time act. After procuring the removal of Plaintiff's medical diet—by informing Nurse Kinter that Plaintiff was buying commissary items that were inconsistent with his medical diet—Lt. Laurin denied approximately eighteen grievances in which Plaintiff complained that he was receiving meals with items that would either cause him severe acid reflux or be harmful to his cardiovascular health. (Pl.'s Exs. 22, 39–40, 43–55, 57–59; T. 336). Nor was Nurse Kinter's retaliation a one-time act. Following the removal of the medical diet, Plaintiff submitted a Sick Call Request complaining that tomatoes caused him "extreme acid reflux." (Pl.'s Ex. 42). Rather than reinstating Plaintiff's medical diet, Nurse Kinter essentially informed Plaintiff that the removal of the medical diet was his own fault. (*Id.* ("This was discussed at visit with M.D. You decided not to follow doctor's recommendations!")). Further, as the Court previously found, Lt. Laurin and Nurse Kinter's removal of Plaintiff's medical diet was a "particularly vicious action given that they were well aware how concerned Plaintiff was about his health and diet." (Dkt. No. 255, at 58). And like the deprivation of proper religious meals, the revocation of Plaintiff's medical diet impacted Plaintiff's physical well-being as it resulted in Plaintiff regularly receiving, over a thirty-seven-

day period, food items that presented him with the choice of eating, knowing the item would cause severe acid reflux or possibly harm his health, or not eating, knowing there would be no replacement. This conduct was made all the more reprehensible by the fact that Defendants revoked Plaintiff's medical diet knowing that he had been deprived of religiously compliant meals *for months* and had only recently begun receiving a proper religious diet.[1]

### 2.   Ratio of Actual Harm to Punitive Award

Courts must also examine the ratio of actual harm to the punitive award and "ask 'whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred.'" *Jennings*, 18 F.4th at 391 (quoting *DiSorbo v. Hoy*, 343 F.3d 172, 187 (2d Cir. 2003)). The Second Circuit has explained that "[w]hile labeled a ratio, the reasonableness determination 'does not entail a simple mathematical formula, as there may be cases where a particularly egregious act has resulted in only a small amount of economic damages.'" *Id.* (quoting *DiSorbo*, 343 F.3d at 187). Similarly, "[e]ven where compensatory damages are substantial, punitive damages awards that are a multiple higher may be warranted because of the deterrent function of punitive damages." *Id.* at 392. However, "an award should not be so high as to result in the financial ruin of the defendant." *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992). "Nor should it constitute a disproportionately large percentage of a defendant's net worth." *Id.*

Here, the 1:1 ratio between actual harm and the punitive damages reflects consideration of the reprehensible nature of Defendants' conduct and the fact that the compensatory damage award, while not substantial, was not insignificant. It also reflects the Court's consideration of

---

[1] Even if Nurse Kinter did not know when Plaintiff had received the religious diet, she was at least aware he was having difficulty obtaining it. (Pl.'s Ex. 13).

the Defendants' financial conditions as testified to at the hearing. Finally, the award is intended to serve a deterrent function to jail supervisors and medical staff.

### 3.      Comparison to Civil and Criminal Penalties

Courts next "compare the punitive damages to 'civil or criminal penalties that could be imposed for comparable misconduct.'" *Jennings*, 18 F.4th at 392 (quoting *Gore*, 517 U.S. at 583). Here, neither party has identified, nor is the Court aware of, comparable civil or criminal penalties.

### 4.      Punitive Damages Awards in Similar Cases

Finally, courts must review similar cases to "confirm[] that the verdict was within the range where similar punitive damages awards were determined to be reasonable." *Id.* at 393. The 1:1 ratio and award of punitive damages in the amount of $3,000 on the free exercise claim and $7,400 on the retaliation claim is well within the range of other punitive damages awards determined to be reasonable. In *Arroyo Lopez v. Nuttall*, 25 F. Supp. 2d 407, 410 (S.D.N.Y. 1998), following a bench trial, the court awarded the plaintiff prisoner punitive damages in the amount of $5,000 for the defendant correction officer's violation of the plaintiff's First Amendment right to the free exercise of religion by shoving the plaintiff, disrupting his prayer. *See id.* (awarding $5,000 in punitive damages and $2,000 in compensatory damages); *see also Nolley v. Cnty. of Erie*, 802 F. Supp. 898, 911 (W.D.N.Y. 1992) (finding "appropriate" an award of $20,000 in punitive damages to inmate subjected "to near-constant emotional and psychological trauma," who was "deprived of access to the law library," and who "was prevented from attending church services"); *Lowrance v. Coughlin*, 862 F. Supp. 1090, 1120 (S.D.N.Y. 1994) (awarding $132,000 in compensatory damages and "punitive damages in the sum of $25,000 as against Commissioner Coughlin, as well as present and former [prison] Superintendents . . . jointly and severally for, inter alia, retaliating against the plaintiff for

"exercising constitutionally protected rights" by subjecting the plaintiff to a cell search, transfers, and deprivation of medical care); *Brown v. Simmons*, No. 89-cv-150, 1994 WL 144252, at *1, 1994 U.S. Dist. LEXIS 5069, at *2 (N.D.N.Y. Apr. 18, 1994) (noting that jury awarded the plaintiff $1.00 in nominal damages against prison commander and supervisor for depriving the incarcerated plaintiff of his First Amendment right to access the mails and $2,500 in punitive damages against defendant commander and $1,250 in punitive damages against defendant supervisor); *see also Mackey v. Watson*, No. 17-cv-01341, 2020 WL 4734339, at *1, 2020 U.S. Dist. LEXIS 146728, at *3 (D. Colo. Aug. 14, 2020) (refusing to remit jury award of $60,000 in punitive damages and $1.00 in nominal damages to plaintiff whose prescription eyeglasses were confiscated, against whom false incident report was issued in retaliation for complaining about cell search).

## III.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff is entitled to a punitive damages award in the amount of $3,000 against Defendant Kevin Laurin on his First Amendment free exercise claim; and it is further

**ORDERED** that Plaintiff is entitled to a punitive damages award in the amount of $3,700 against Defendant Kevin Laurin and $3,700 against Defendant Suzanne Kinter on his First Amendment retaliation claim; and it is further

**ORDERED** that the Clerk of the Court is directed to enter judgment.

**IT IS SO ORDERED.**

Dated: May 26, 2023
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge