**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CHAMMA K. BRANDON,

                                        Plaintiff,                    9:13-cv-00939 (BKS/ATB)

v.

SUZANNE KINTER and KEVIN LAURIN,

                                        Defendants.

**Appearances:**

*For Plaintiff:*
William S. Nolan
Gabriella R. Levine
Jennifer M. Thomas
Whiteman Osterman & Hanna LLP
One Commerce Plaza
Albany, New York 12260

*For Defendant Kevin Laurin:*
Thomas K. Murphy
Murphy Burns LLP
407 Albany Shaker Road
Loudonville, NY 12211

**Hon. Brenda K. Sannes, Chief United States District Judge:**

<h2 style="text-align:center">MEMORANDUM-DECISION AND ORDER</h2>

## I.      INTRODUCTION

This 42 U.S.C. § 1983 action arose from Plaintiff Chamma K. Brandon's 2012

incarceration at the Clinton County Jail ("CCJ") where he repeatedly received pork meals despite

his requests for a no-pork, Muslim diet. (*See generally* Dkt. No. 17). In a Memorandum-Decision

and Order entered on October 17, 2023, the Court found Defendant Kevin Laurin attempted to

commit fraud on the Court by submitting a false affidavit indicating that a notification of

religious diet was placed in Plaintiff's file at CCJ and that Laurin acted with intentional bad faith. (*See generally* Dkt. No. 307). The Court determined that the appropriate sanction was an award of the attorneys' fees and costs Plaintiff incurred in litigating this issue. (*Id.* at 18–19). Presently before the Court is Plaintiff's application for $56,509.00 in attorneys' fees and costs and $348 in travel costs. (Dkt. No. 310). Defendant responds that while Plaintiff's counsel's billing rates are reasonable, the number of hours appears to be excessive and the attorney work duplicative and asserts the amount awarded should not exceed $25,000. (Dkt. No. 311). For the reasons that follow Plaintiff's application for attorneys' fees and costs pursuant to the Court's October 17, 2023 Order is granted in part and denied in part.

## II.   ATTORNEYS' FEES AWARD

District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health & Hosps Corp.*, 537 F.3d 132, 151 (2d Cir. 2008). "The reasonable hourly rate should be what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 289–90 (2d Cir. 2011) (citation omitted). Courts in the Second Circuit generally use the lodestar, or "presumptively reasonable fee," approach to calculate reasonable attorneys' fees. *See Lilly v. City of New York*, 934 F.3d 222, 229 (2d Cir. 2019). This approach requires a district court to set a "reasonable hourly rate, taking account of all case-specific variables," and determine "the appropriate billable hours expended." *Lilly*, 934 F.3d at 230 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189–90 (2d Cir. 2008)); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals."); *DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985)

("[W]here . . . the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly rate, i.e., the lodestar figure, is presumptively appropriate."). "[T]he district court . . . bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 184. "[T]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

### A.     Reasonable Hourly Rates

The Supreme Court has explained that district courts should generally use the "prevailing market rates in the relevant community" in determining the reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Second Circuit has interpreted the "community" to mean "the district where the district court sits." *See Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)); *see also Grant v. Syracuse*, 357 F. Supp. 3d 180, 200–01 (N.D.N.Y. 2019). A review of cases in this District indicates that the following hourly rates (or rate ranges) are reasonable: $250–$350 for partners;[1] $165–$200 for associates;[2] and $80–$90 for paralegals, legal assistants, and other paraprofessionals.[3]

Here, Plaintiff seeks an hourly rate of $215 for attorneys Gabriella Levine and Jennifer Yetto, both of whom are senior litigation associates. (Dkt. No. 310-1, ¶¶ 27, 30–32). Levine states that their firm, Whiteman Osterman & Hanna LLP, ordinarily bills their "work on this type

---

[1] *See Sadowski v. Urbanspotlite LLC*, No. 22-cv-887, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15 (N.D.N.Y. Apr. 7, 2023); *see also Grant v. Lockett*, 605 F. Supp. 3d 399, 404 (N.D.N.Y. 2022).

[2] *See Sadowski*, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15; *see also Grant*, 605 F. Supp. 3d at 404.

[3] *See Sadowski*, 2023 WL 2838376, at *6, 2023 U.S. Dist. LEXIS 61259, at *15; *see also Grant*, 605 F. Supp. 3d at 404.

of litigation at a rate of $305" but that the firm reduced their rates "for purposes of this fee application to $215, in an attempt to bring the same within the range accepted as reasonable." (*Id.* ¶¶ 30, 32). Levine states that Attorney Viktoria Yudchits is a second-year litigation associate, whose work "would ordinarily be billed at rates ranging from $220–255" but that the firm has "reduced her fees on this matter to $165 per hour in an attempt to bring the same previously within the range accepted by this Court pursuant to the Lodestar method." (*Id.* ¶¶ 33–34). Arielle Leisendfelder appears to be a paralegal whose work was billed at the hourly rate of $90. (Dkt. No. 310-2, at 9). The Court reduces Levine and Yetto's hourly rate to $200,[4] the highest rate courts in this district have found reasonable for senior associates, and finds the hourly rates of $165 and $90 for Yudchits and Leisendfelder to be within the range of reasonable rates for associate attorneys and paralegals.

### B.      Reasonable Number of Hours

Having determined the rates to be applied to services performed by Plaintiffs' counsel, the Court must next determine "the appropriate billable hours expended" to calculate the overall fee award. *See Lilly*, 934 F.3d at 230 (quoting *Arbor Hill*, 522 F.3d at 189–90). The invoice Plaintiff submitted in support of the fee application reflects a total of 258.5 hours of attorney and paralegal work, with the majority of the work performed by Levine (135.10 hours) and Yetto (106.80 hours). (Dkt. No. 310-2, at 9). Defendants, meanwhile, contend that "Plaintiff's request for attorneys' fees and costs is excessive and unreasonable, and the amount to be awarded should not exceed twenty-five thousand dollars." (Dkt. No. 311, at 6).

---

[4] It appears Levine and Yetto billed their travel at an hourly rate of $107.50. (Dkt. No. 310-2, at 7). The Court finds this rate reasonable and awards it as billed.

A fee applicant "bears the burden of documenting the hours spent by counsel, and the reasonableness thereof." *Brooks v. Roberts*, 501 F. Supp. 3d 103, 114 (N.D.N.Y. 2020) (citation omitted). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "In determining a reasonable fee, the district court 'should exclude . . . hours that were not "reasonably expended,"' including 'hours that are excessive, redundant, or otherwise unnecessary.'" *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 28 (N.D.N.Y. 2015) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "On a fee-shifting application, . . . the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015). Rather, "[t]he test is whether the plaintiff 'spen[t] the minimum necessary to litigate the case effectively.'" *Id.* (second alteration in original) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).

Additionally, "[a]lthough objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 209 (2016). Where a party's misconduct has led to the imposition of sanctions, whether "[t]hese sanctions adequately reflect the gravity of the . . . misconduct and will sufficiently deter future misbehavior" are also considered. *Esposito v. Suffolk Cnty. Cmty. Coll.*, 390 F. Supp. 3d 428, 431–32 (S.D.N.Y. 2019) (issuing sanctions including preclusion, fines, and attorney's fees for party's submission of fabricated documents and refusal to admit the truth); *See Amerisource Corp. v. Rx USA Intern. Inc.*, No. 02-cv-2514, 2010 WL 2730748, at *8, 2010 U.S. Dist. LEXIS 67108, at *22–23 (E.D.N.Y. Jul. 6, 2010) (issuing $100,000 in sanctions for introduction of fabricated e-mails to evidence). The Supreme Court has instructed, however, that

"legal fees beyond those resulting from the litigation misconduct . . . cannot stand." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017). Therefore, if hours billed are unreasonable or unrelated to the litigation misconduct, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Osterweil,* 92 F. Supp. 3d at 28 (quoting *Kirsch,* 148 F.3d at 173). Similarly, the court is "'accorded ample discretion' in assessing whether the extent of staffing was appropriate in a given case in light of the complexity of the litigation." *Id.* (quoting *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

As an initial matter, the Court notes that Plaintiff's counsel has submitted for work performed by two senior associates, Gabriella Levine and Jennifer Yetto, yet Plaintiff's memorandum of law states that "Attorney Nolan, a senior litigation partner . . . supervised all associate work in this case and contributed extensively to the strategy concerning litigation of the special diet notification." (Dkt. No. 310-4, at 12). On this point Levine states, "in an effort to be reasonable in light of the pro bono nature of this representation, this firm has not included any of Attorney Nolan's hours in the instant fee application." (*Id.* at 12–13).  The Court recognizes and appreciates counsel's review of their own records to exclude the senior partner's hours spent on this case. The Court also recognizes and appreciates the extremely high quality of pro bono counsel's work on this case, and the fact that pro bono counsel continued to provide excellent representation to the Plaintiff following trial, in investigating and pursuing sanctions for an attempted fraud on the Court, long after counsel normally would have expected their pro bono service to have been completed. This litigation was prolonged by Defendant Laurin's repeated failure to explain his false affidavit at the summary judgment stage, relying on the undated Special Diet Notification form.

### 1.      Excessive Billing

Defendant's submission identifies certain hours presented by Levine and Yetto that he contends are "excessive and duplicative [in] nature." (Dkt. No. 311, at 3). Defendant points in particular to Plaintiff's counsel spending 147.2 hours preparing post-trial briefs and argues this is excessive as it is "neither reasonable nor appropriate for that amount of work." (*Id.* at 5).

The Second Circuit has instructed district courts to:

> examine the hours expended by counsel and the value of the work product of the particular expenditure to the client's case. Efforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts.

*Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *DiFilippo*, 759 F.2d at 235–36). Plaintiff's counsel has billed a total of 103.2 hours between January 26, 2022 and March 3, 2022 (59.6 hours by Levine and 43.6 hours by Yetto) for researching, drafting, and editing their 68-page post-trial brief. (Dkt. No. 310-2, at 4; *see also* Dkt. No. 247 (Plaintiff's Post-trial Brief)). Plaintiff's counsel was appointed as *pro bono* counsel many years into the pendency of this case, and at that time counsel reasonably and responsibly "conducted an analysis of the case file that had accumulated prior to its appointment," before going to trial. (Dkt. No. 310-4, at 4). This analysis "includ[ed] an investigation of Defendants' seven-year-long use, reliance upon and arguments concerning an undated diet notification[.]" (*Id.*). Plaintiff's post-trial brief incorporates this detailed history however, according to Plaintiff's counsel only 12 of the 68-pages concern the diet notification slip. (*See* Dkt. No. 310-1, ¶ 49). Defendant argues that "[t]his amount . . . on [the Special Diet Notification] issue alone is clearly excessive." (Dkt. No. 311, at 4).

For Plaintiff's 20-page reply brief, attorney declaration, and attached discovery material solely regarding the undated Special Diet Notification form, (*see* Dkt. No. 252 ("Plaintiff's

Memorandum of Law re The Undated Diet Slip")), counsel has billed 44 hours: 7.3 by Levine and 36.7 by Yetto, (Dkt. No. 310-2, at 4–5). Defendant argues that "44 hours . . . [is] excessive . . . for research and preparation of a reply." (Dkt. No. 311, at 4). The Court notes that this entire brief addressed the undated diet slip, and that at least 5 hours of attorney time was spent drafting the reply declaration, (Dkt. No. 310-2, at 5), which set forth the history of communication between counsel regarding discovery and the diet notification slip at issue, as well as counsel's recollection of communication with Defendants' counsel about the different versions of the diet notification slip. (*See* Dkt. No. 252-1). This was not repetitive and was responsive to the declarations by Defendants' counsel concerning the diet notification slip. (Dkt. Nos. 250-1, 250-2). The other 39 hours billed in connection with the reply included researching, reviewing Defendants' submissions and declarations, conferring on how to reply, and drafting the reply memorandum of law. (Dkt. No. 310-2, at 4–5). However, the Court notes that 6 pages of the 20-page brief appear have been copied directly from Plaintiff's post-trial brief. (*See* Dkt. No. 252, at 9–15 (quoting proposed findings of fact ¶¶ 144–68); Dkt. No. 247, at 40–46 (proposed findings of fact ¶¶ 144–68)).

Overall the Court finds a reduction of 70% in time is warranted on the initial post-trial brief. For the reasons identified above, the Court finds that the total hours billed to prepare the initial post-trial brief is excessive for the purposes of determining legal fees resulting from the litigation misconduct. *See Gamero v. Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 175 (S.D.N.Y. 2018) ("The Second Circuit has recognized the authority of district courts "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'" (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987)).

2.      **Duplicative Billing**

Defendant identifies eight occasions which he contends to represent duplicative, or double-billing, by Levine and Yetto: April 7, 2022, March 29, 2023, June 1, 2023, July 14, 2023, July 19, 2023, July 26, 2023, October 17, 2023, and November 1, 2023. (Dkt. No. 311). Defendant states Plaintiff's counsel is "double billing for telephone conferences between two attorneys," and that the presence of two attorneys at the contempt hearing "was duplicative and unnecessary to prosecute the sanctions application." (*Id.* at 4, 6). Defendant also states, "there seems to be duplication of research on the 'crime fraud exception' in entries dated 6/12/23 and 7/18/23." (*Id.* at 5).

This Court has recognized a distinction between duplication of efforts and collaboration between multiple attorneys or firms. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Nigrelli*, 2023 WL 6200195, at *16, 2023 U.S. LEXIS 168892, at *46–47 (N.D.N.Y. September 22, 2023). To determine whether there was duplication, "the Court will consider the number of hours worked and the types of tasks performed[.]" *Id.* 2023 WL 6200195, at *16, 2023 U.S. LEXIS 168892, at *46. On the eight dates identified by Defendant, Levine and Yetto billed a total of 8.4 hours for the purpose of conferring about this case. Considering the Court's recollection of efforts made by both attorneys to advocate for their client, that Plaintiff's counsel has tailored the respective fee petition to remove additional conference time by the senior partner, and that the entire fees application totals 258.50 hours, the Court finds 8.4 hours here demonstrates reasonable attorney collaboration.

Defendant also opposes as duplicative the fourteen total hours submitted for two attorneys to attend the July 19, 2023 evidentiary hearing. When determining the appropriateness of staffing, the Second Circuit has directed district courts to make this assessment on a case-by-case basis, and to consider "what is appropriate for the scope and complexity of the particular

litigation." *Carey*, 711 F.2d at 1146. "[P]arties are not barred as a matter of law from receiving

fees for sending . . . an extra lawyer into court to observe and assist." *Id.* At the July 19, 2023

evidentiary hearing, the Court observed Attorneys Levine and Yetto both perform zealous cross-

examinations of witnesses, as well as provide assistance to each other through observation and

redirect. Although this litigation was not highly complex, given Defendant's ongoing pattern of

misbehavior and intentional bad faith regarding the undated Special Diet Notification form, the

Court finds the attendance of two attorneys at the evidentiary hearing solely focused on this issue

to be reasonable.

Lastly, Defendant opposes Plaintiff's counsel's submissions from June 12, 2023 and July

18, 2023, identifying a duplication of research into the crime fraud exception to attorney-client

privilege. (Dkt. No. 311, at 5). On June 12, 2023, Levine billed 2.4 hours of time to "[r]esearch

attorney client privilege issues re crime fraud exception in advance of evidentiary hearing on

sanctions," as well as to, "[d]raft document demands [] in preparation of evidentiary hearing on

sanctions." (Dkt. No. 310-2, at 6). On July 18, 2023, the day before the hearing, Levine billed 9.2

hours to "[p]repare cross examination of K. Laurin and potential attorney witnesses for sanctions

hearing; Prepare exhibits for sanctions hearing; Draft pre-hearing motion to compel and to

preclude concerning document demands; [and] Research crime fraud exception to privilege." (*Id.*

at 7). The Court does not find these entries to be vague as to the nature of work performed,

*Kirsch,* 148 F.3d at 172, or find the number of hours billed for preparation the day before the

evidentiary hearing to be unreasonable. Therefore, the Court will accept these billing entries as

presented.

### C.    Costs

In addition to services provided by Plaintiff's counsel, the Court must also examine the

reasonableness of costs and expenses. "[A]ttorney's fees awards include those reasonable out-of-

pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, (2d Cir. 1998) (quoting *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989)). Attorneys' expenditures on litigation are unnecessary and non-compensable when "they exceed the minimum that a reasonable paying client would pay absent a fee-shifting arrangement." *Grant v. Syracuse*, 357 F. Supp. 3d at 208 (quoting *Amerisource Corp. v. Rx USA Int'l Inc.,* 2010 WL 2160017, at *15, 2010 U.S. Dist. LEXIS 52424, at *46 (E.D.N.Y. May 26, 2010)).

Here, the requested expenses include attorney costs of $2,408.90 for court transcripts and "Fedex" charges in connection with this issue, plus $348.00 for Plaintiff's travel costs. (Dkt. No. 310-2, at 9; Dkt. No. 310-4, at 13). Defendant does not argue that the costs sought are unreasonable or otherwise inappropriate. In fact, Defendant does not raise any objection to this section of Plaintiff's counsel's submission. Upon examination, the Court finds the application for costs and expenses to be reasonable. Accordingly, the Court grants Plaintiff's request for $2,408.90 in costs and $348 for Plaintiff's travel expenses, for a total of $2,756.90 in costs and expenses.

### D.    Final Calculation

Having carefully reviewed the billing records, and based on the Court's familiarity with this case, the Court finds that Plaintiff is entitled to a substantial attorneys' fees award in light of the extensive work involved in investigating the undated Special Diet Notification at trial, in the post-trial brief, in two later memoranda focused on the undated Special Diet Notification, at the evidentiary hearing and in this fee application. However, the above-identified issues in billing records do warrant some reduction. Accordingly, based on these factors, the Court applies a reduction to the hourly rate for Levine and Yetto and a 70% reduction to the billing for the initial post-trial brief. All other fees and costs are awarded as billed. The Court therefore finds Plaintiff

11

is entitled to attorneys' fees in the total amount of $35,964, as itemized below, and costs and expenses in the amount of $2,756.90.

**Table 1: Services Relating to the initial Post-Trial Brief**
**(January 26, 2022 – March 3, 2022)**

| Attorney/Paraprofessional | Adjusted Rate | Hours | Total Fee |
|---|---|---|---|
| Gabriella Levine | $200.00 | 59.6 | $11,920.00 |
| Jennifer Yetto | $200.00 | 43.6 | $8,720.00 |
| **Subtotal:** | – | 103.2 | $20,640.00 |
| **Reduction:** | – | – | 70% |
| **Total Fee:** | – | – | **$6,192.00** |

**Table 2: All Other Services Provided**
**(June 29, 2021 – January 25, 2022; April 5, 2022 – November 16, 2023)**

| Attorney/Paraprofessional | Adjusted Rate | Hours | Total Fee |
|---|---|---|---|
| Gabriella Levine | $200.00 | 75.2 | $15,040.00 |
| Jennifer Yetto | $200.00 | 63.2 | $12,640.00 |
| Viktoria Yudchits | $165.00 | 5.7 | $940.50 |
| Arielle Leisenfelder | $90.00 | 3.0 | $270.00 |
| Travel for Evidentiary Hearing | $107.50 | 8.2 | $881.50 |
| **Total Fee:** | – | **155.3** | **$29,772.00** |

In sum, Plaintiff is awarded $35,964 in fees and $2,756.90 in costs and expenses for a total award of $38,720.90.

## III.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's application for attorneys' fees and costs, (Dkt. No. 310), is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff is awarded $35,964 in attorney and paralegal fees and $2,756.90 in costs and expenses for a total award of $38,720.90.

**IT IS SO ORDERED.**

Dated: <u>September 10, 2024</u>
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge